153 So.2d 363

Rev. Alphonse RIGOUTS and General Accident Fire & Life Assurance Corporation, Ltd.

v.

A. E. LARKAN.

No. 46436.

April 29, 1963.

Rehearing Denied June 4, 1963.

Gist, Murchison & Gist, by DeWitt T. Methvin, Jr., Alexandria, for plaintiffs relators.

Watson, Williams & Brittain, by Richard B. Williams, Natchitoches, for defendant-respondent.

McCALEB, Justice.

This is an action for damages arising out of a motor vehicle accident which occurred in Natchitoches Parish at about 3:00 p. m. on November 5, 1958 at the southerly approach of Louisiana Highway 1 to the Monette Ferry Bridge, when a 1955 Chevrolet automobile owned and operated by Father Alphonse Rigouts, proceeding in a northerly direction collided with a 1958 International truck towing a 1955 Freuhauf trailer which was travelling in a southerly, or the opposite, direction. Having sustained personal injuries as a result of the accident, for which he claims $1936.75, including medical and other out-of-pocket expenses, Father Rigouts (who will be sometimes referred to herein as the sole plaintiff) instituted the suit, jointly with his collision insurance carrier, General Accident Fire & Life Assurance Corporation, Ltd., which expended $750 towards the repair of the Chevrolet, against A. E. Larkan, the owner and driver of the truck-trailer, alleging that the mishap was due to Larkan's negligence in driving the truck-trailer over the center line of the two-lane highway at an excessive rate of speed at the time plaintiff was approaching from the opposite direction, thus creating an emergency from which plaintiff could not extricate himself by the timely application of his brakes.

In due course defendant filed his answer, denying generally the charges contained in the petition and, in a reconventional demand, claimed $3460 for the damage sustained by his truck-trailer and other expenses, asserting that the accident was caused solely by the negligence of plaintiff. He averred that plaintiff was driving the Chevrolet at an excessive rate of speed around a curve and thereafter downhill on a cloudy, wet and rainy day on a blacktopped road, which caused him to lose control of the car and crash into the truck-trailer.

Following a trial in the district court on the issues thus formed by the pleadings, the judge resolved that the proximate cause of the accident was the failure of plaintiff to reduce the speed of his car when he saw the big truck entering the bridge, observing that plaintiff was coming downhill on a wet asphalt road " * * * and had he approached the situation that confronted him with caution there would have been no accident. * * * " On this finding judgment was awarded in favor of defendant on the reconventional demand for $1808.20 against both plaintiffs in solido.

On appeal, the Court of Appeal, Third Circuit, affirmed the judgment, declaring that, after reviewing the evidence, it could not find sufficient grounds to hold that the trial judge " * * * was manifestly erroneous in accepting the defendant's, rather than the plaintiff's version of the accident." The Court of Appeal set forth that the defendant and his wife, who was a passenger in the cab of the truck, testified that as the truck-trailer entered the bridge it may have been across the center line of the highway but, by the time it reached the center of the bridge, they observed plaintiff's car swerve on its approach to the bridge, so " * * * they moved into their right-hand lane as far as possible; * * * " and that their vehicle was completely in its

proper lane and had cleared the bridge 30 or 40 feet " * * * [when] the rear end of plaintiff's automobile swerved across the center lane of the highway and struck the left rear wheels of the truck tractor * * * ". See Rigouts v. Larkan, La.App., 145 So.2d 48.

In view of the factual finding of the Court of Appeal that Larkan was driving his truck partially on the wrong side of the road until he reached the middle of the two-lane bridge, we granted a writ of review herein as we thought it manifest that this infraction of the law (see R.S. 32:-231)[1] constituted negligence having causal connection with the accident and that, therefore, defendant should not have been awarded judgment on his reconventional demand. Of course, since the case is now before us it becomes our duty to review the entire evidence and decide the matter as though it were brought here by direct appeal. See Section 11 of Article 7 of the Constitution; Thornton v. Strauss & Son, Inc., 240 La. 455, 123 So.2d 885 and cases there cited.

At the southern approach to the Monette Ferry Bridge, where the accident occurred, Louisiana Highway 1 is a two-lane blacktopped road approximately 19 feet wide. The road shoulders end at the approach to

1. It provides in part: "Upon all highways * * * the driver of a vehicle shall drive it upon the right half of the highway * * * ." This section has been since amended by Act 310 of 1962 (see R.S. 32:71) but without substantial change in the above quoted provision.

the bridge and the approach is bordered by guard rails for the protection of traffic. The bridge itself is not long but the approaches thereto, which are supported by trestles, are more extensive so that the entire structure is about 200 feet in length.

Father Rigouts, travelling alone, was driving from Alexandria to Natchitoches. He testified that his speed was approximately 45 miles per hour; that, on his way to the bridge, he was required to make a right turn in the road so he slowed down to 40 miles per hour, in conformity with a suggested safe maximum speed sign posted at the entrance of the curve; that, after negotiating the curve and proceeding downgrade toward the bridge, he increased his speed slightly to 45 miles per hour; that he then noticed the large truck and trailer entering the bridge from the north side; that, when he first saw the truck, he did not pay much attention to it but, as he approached, he observed that it was holding the middle of the road while traversing the bridge and, at that time, " * * * I suddenly realized that I was not going to be able to clear the space between the truck and the bridge, so then I fully applied the brakes and tried to stop because there was no shoulder, there was an alternative of either hitting the truck or hitting the bridge there or running off of the road into the water so I tried to come to a stop and I did not succeed." He

stated that, when he put on his brakes, his car swerved slightly in the road but he kept to his right side; that the truck, however, continued to straddle the center line of the highway and that, just before contact was made, it is probable that the truck driver swerved the truck over in an attempt to regain his proper lane but that it never returned to the lane in time to avert the collision between the rear dual wheels of the truck and front left end of the automobile.

Father Rigouts' testimony is clear, concise and, as we shall demonstrate later, factually correct in our opinion. His statement is amply supported by the testimony of an independent eyewitness, a Mrs. Mary Tabb, who was driving a pickup truck following the Larkan truck and trailer on her way to the nursery she operates near Lecompte, Louisiana.

Mrs. Tabb says that she was following the Larkan truck which had passed her on the road north of the bridge; that she observed the truck enter the bridge and proceed to cross it in the center of the highway while plaintiff's car was coming down the hill applying its brakes, apparently trying to stop or, as she puts it, " * * * dancing in the highway". She asserts positively that at the time of the collision the truck and trailer were still over the center line of the highway.[2]

2. In addition, plaintiff produced two other witnesses but their evidence is not of appreciable value. One of these witnesses, a Mr. Glaze, was a passenger in Mrs.

Mr. Larkan, according to his testimony, had left Tucson, Arizona at 1:00 p. m. the day before the accident accompanied by his helper, one Bill MacKee, with a 36,000 pound load of shrimp to be delivered at St. Simeon Island, Georgia. He reached Las Cruces, New Mexico that night and, on the next day, drove across the state of Texas to the city of Marshall, where he was met by his wife and two small boys that night. The following day (the day of the accident) he left Marshall and was on his way to the Georgia coast (some 750 miles distant) where he was due to deliver his freight on the next day. He states that he was driving his truck at a speed of about 40 to 45 miles per hour and seated with him in the cab of the truck were his wife and Bill MacKee; that, when the truck entered the bridge, he noticed the Chevrolet making a turn in the road at the top of the hill in its approach to the bridge from the south; that, when it reached the straight part of the road, he saw the car swerve in its lane when it was approximately 300 feet from his truck; that, at that time, he was about in the middle of the bridge; that his truck had been over the center line but he had completely returned to the right-hand lane of the bridge when he noticed that the car was swerving; that the Chevrolet continued forward out of control and that the left rear end thereof struck the left rear dual wheels of the truck which caused the front part of the Chevrolet to collide with the rear wheels of the trailer. Mr. Larkan was asked on cross-examination to designate on an enlarged photograph of the scene of the accident with the letter W "* * * the point near the center of the bridge where you believe that you got back on your side of the highway". In compliance with this request, he marked a point on the southern approach of the bridge, not far from the point of collision, indicating that the truck-trailer had passed over the bridge proper and had traversed about two-thirds of the entire bridge structure before it regained its proper side of the road.

Mr. Larkan also stated that, although he brought his truck-trailer as far as he could

Tabb's pickup truck. He testified that he has poor eyesight and did not see the collision. His statement is merely corroborative of Mrs. Tabb's evidence that she and Glaze measured the distance from the bridge to where the truck-trailer stopped after the accident and that it was about 1000 feet.

The other witness, a Mr. Brasher, was a State Trooper who made an investigation of the accident. He said that the Larkan truck and trailer was 400 or 500.

feet on the south side of the bridge when he arrived on the scene and that the Chevrolet was on the east lane of the south approach to the bridge facing west with its rear end hanging over the east guard rail. He found no evidence to indicate the positions of the two vehicles involved at the time of the collision with reference to the white stripe dividing the traffic lanes. Nor did he find evidence of any skid marks on the road at or near the point of collision.

to the proper side of the road, he did not decelerate his speed but merely shifted into a lower gear and finally brought the large vehicle to a stop on the incline of the hill several hundred feet from the point of impact.

The testimony of Mr. Larkan is corroborated by his wife. Their evidence, in sum, portrays that plaintiff, travelling at a fast rate of speed down the slope to the bridge on a wet blacktop, simply lost control of his car which swerved on the highway and finally collided with the rear portion of the truck-trailer after it pulled over from the middle of the bridge to its proper side. Yet, the only precaution admittedly taken by Mr. Larkan to avert the accident was to regain his proper side of the road shortly before the collision. Noting plaintiff in distress, it would seem that he would have at least retarded his speed before the impact.

■ After a careful perusal of all the evidence, we are convinced that Father Rigouts' testimony, corroborated by Mrs. Tabb, presents a fairly accurate account of the accident and clearly preponderates over the statement of Mr. and Mrs. Larkan.

Our view of the evidence finds additional support in the circumstance that Bill MacKee, Mr. Larkan's helper (undoubtedly an eyewitness) who was sitting in the cab of the truck with Mr. and Mrs. Larkan at the time of the accident, did not give evidence in the case.

■ It appears from the record that, at the beginning of the trial, counsel for defendant advised the court that MacKee, who lived in Texas, had promised to appear as a defense witness but had failed to do so. Because of his absence, it was stipulated between counsel that MacKee's testimony would be taken by deposition within 30 days after the oral evidence was heard in the case. And, conformably with this agreement, the case was held open at the conclusion of the oral evidence for the taking of MacKee's testimony. Still, although a long time elapsed thereafter (almost two years), MacKee's deposition was never taken and no explanation has been offered by defendant for failing to adduce the testimony of this eyewitness who was his employee and under his control. In this situation, it is to be presumed that, had MacKee testified, his evidence would have been unfavorable to defendant's cause. Bates v. Blitz, 205 La. 536, 17 So.2d 816; Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582 and other cases.

■ So, with the acceptance of plaintiff's evidence as genuine, there can be little doubt that the accident is solely attributable to Larkan's negligence in continuing to drive his truck-trailer partially on plaintiff's side of the road and in failing to yield the entire east lane so that the Chevrolet could pass in safety. Unquestionably, Larkan's negli-

gence in this respect placed plaintiff suddenly in a position of imminent peril without sufficient time to consider and weigh all the circumstances or best means to adopt in order to escape the impending danger. Under these conditions the rule of law is that, if plaintiff did not adopt the best method to meet the emergency, he is excused from his failure to do so provided, of course, that he has not substantially contributed to his own peril. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 and Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355.

Although there is no special plea that plaintiff was guilty of contributory negligence we have, nevertheless, in view of the allegations of the reconventional demand, considered whether the evidence justifies a holding that Father Rigouts was at fault. Our conclusion is that he was not— for, accepting his statement as true that his speed was not more than 45 miles per hour, well within the legal rate and not per se hazardous under the weather conditions prevailing at the scene, he did all that was humanly possible to avert the accident which was solely attributable to the imprudence of Larkan in driving his cumbersome vehicle over the bridge in the middle of the road, thus creating a danger to all oncoming traffic within the vicinity of the bridge.

Notwithstanding that plaintiff suffered a broken nose and broken left shoulder and other lacerations of the body, his claim for damages for his personal injuries, together with actual expenses for hospital and medical treatment, have been set at such a conservative figure ($1936.75) that it has been stipulated by the parties that, in the event of recovery, plaintiff and his collision insurer are entitled to judgment for the amounts sued for.

Accordingly, the judgment of the district court, which was affirmed by the Court of Appeal, is reversed and it is now ordered that there be judgment herein in favor of Reverend Alphonse Rigouts and against the defendant, A. E. Larkan, in the full sum of $1936.75, together with legal interest thereon from date of judicial demand until paid.

It is further ordered that there be judgment in favor of General Accident Fire & Life Assurance Corporation, Ltd. and against A. E. Larkan in the full sum of $750 with legal interest thereon from date of judicial demand until paid.

Defendant's reconventional demand is dismissed and he is cast for all costs of these proceedings.

HAMITER, Justice (concurring in part and dissenting in part).

My appreciation of the facts of this case compels me to conclude that the drivers of the two colliding vehicles were guilty of concurrent negligence which proximately caused the accident. Thus, Reverend Rig-

outs approached the bridge on a wet, slippery, steep down-grade, highway (previously he had used this route often) at a speed of approximately forty-five miles per hour and hence, under such circumstances, he was not exercising reasonable and proper control of his automobile which admittedly had worn or slick tires. Larkan, on the other hand, drove at a rather rapid rate his large, wide, combination truck-trailer onto, and partially across, such bridge while straddling the highway's center line. Accordingly, I am of the opinion that neither plaintiffs nor the defendant should recover damages herein.

For case on remand see 154 So.2d 645.