245 So.2d 151

Joseph H. JORDAN, Plaintiff-
Appellant-Relator,

v.

The TRAVELERS INSURANCE COMPANY
et al., Defendants-Appellees-Respondents.

No. 50508.

Feb. 24, 1971.

Ronald A. Curet, Hammond, for plaintiff-appellant.

Macy, Kemp & Newton, Duncan S. Kemp, III, Hammond, for defendants-appellees.

TATE, Justice.

In this tort suit, the court of appeal found total and permanent disability, but it denied recovery for loss of earnings and for future medical expenses. 231 So.2d 678 (La.App.1st Cir. 1970). On the plaintiff's application, we granted certiorari to review this denial, 256 La. 65, 235 So.2d 95 (1970). At the same time, we refused the defendant's application for certiorari to review, inter alia, the court of appeal's holding that the permanent disability was tort-caused. 256 La. 68, 235 So.2d 96 (1970).

## Scope of Review

At the threshold, we are confronted with a question of the scope of our review. This arises because the defendants-respondents now re-urge before this court contentions rejected by the court of appeal (such as that the plaintiff's permanently disabling condition was not caused by the accident) and as to which we denied the defendants' application for writs of review.

The defendants-respondents rely upon the provision of La.Const. Art. VII, Section 11 (1921) that, when certiorari is granted to review a court of appeal judgment, the Supreme Court shall have "the same power and authority in the case as if it had been carried directly by appeal to the said court * * *."

This provision confers upon this court the authority to review all questions and grant any relief in favor of a party to whom it may grant a writ to review a court of appeal judgment, the same as if the matter had been appealed directly here. Rigouts v. Larkan, 244 La. 479, 153 So.2d 363 (1970). It was not intended, however, to confer upon this court power to change the previous court's decree in favor of a party to whom a writ of review is *not* granted.[1]

1. Neither can an appellate court, for instance, alter a decree in favor of one who does not appeal nor answer an appeal.

Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968).

· Thus, where certiorari is granted on the application of one party to a suit, the judgment (decree) cannot be amended or changed to the benefit of other parties who have failed to apply for such review. Madison v. American Sugar Refining Co., 243 La. 408, 144 So.2d 377 (1962); Pennington v. Justiss-Mears Oil Co., 242 La. 1, 134 So.2d 53 (1961); D. H. Holmes Co., Ltd. v. Morris, 188 La. 431, 177 So. 417, 114 A.L.R. 905 (1937); and the many decisions cited therein.[2]

▮ Further, at the time a writ of certiorari is granted, this court may itself restrict its subsequent review. When, in granting a writ of review, this court limits it to certain issues and denies it as to all other specifications of error, the court of appeal judgment is final as to the latter and cannot be reconsidered. Deposit Guaranty National Bank v. Shipp, 252 La. 745, 214 So.2d 129 (1968).

▮ Similarly, when (as here) both parties apply for review, this court's denial

of the application of one constitutes its final determination upon the matters included therein. This court then will not pass a second time upon these matters at the hearing on the review granted through the application of the other party. Gastauer v. Gastauer, 152 La. 958, 94 So. 897 (1922).

Under the present circumstances, therefore, our denial of the defendant's application for certiorari constitutes a final determination by us ·as to the issues presented therein. Thus, for purposes of our present review, we do not consider, inter alia, the defendant's contention (previously rejected by our denial of certiorari) that the court of appeal erred in finding that the defendant's tort caused the plaintiff's severe and permanent disability.

### Issues for Review

Our .review is therefore limited to the issues raised by the plaintiff's successful application for writs of certiorari:

---

2. Some decisions go further and indicate that, when a writ is granted to an opposing party, the party successful in obtaining the decree in the court of appeal cannot, even in *support* of such decree, re-urge in the Supreme Court *grounds* of decision rejected by the intermediate court, when this party has failed to apply also for certiorari. Blades v. Southern Farm Bureau Cas. Ins. Co., 237 La. 1, 110 So.2d 116 (1959); Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d ·209 (1949). Such jurisprudence may no longer apply, however, in view of the 1960

Code's abolition of the "theory of the case" doctrine for appellate review and its authorization for the appellate court to render any judgment proper upon the record before it. La.C.C.P. Art. 2164. (The "record on appeal" includes, of course, the limitation that the relief granted must be within the scope of the pleadings filed, appeals taken, or writs granted.) · Thus, the appellate court may affirm on grounds different than those argued before or relied upon by the lower court. This precise question is not before us, however, so we need not now determine it.

(a) That the court of appeal erred in denying the plaintiff an award for loss of past and future wages; and

(b) That it erred in denying him an award for future medical expenses.[3]

### Facts

Having denied the defendants' application for review as to their correctness, we accept the facts as found by the court of appeal and supported by a preponderance of the evidence before us. These facts show:

The plaintiff Jordan was injured in an accident on April 23rd, 1965 through the negligence of the driver of the defendants' truck. He was then 60 years of age, an active and productive individual, a carpenter by trade. He worked regularly at this trade and, in addition, he assisted his wife in the operation of a retail bakery business.

As a result of the accident he sustained a severe cervical neck sprain (whiplash), from which he eventually recovered. In addition, however, the tort-caused trauma caused or activated a chronic brain syndrome associated with cerebral arterial sclerosis, which caused a psychotic reaction.

Because of these tort-caused mental residuals the plaintiff is and has been permanently unable to return to work. In addition, the plaintiff contends, the medical evidence shows that he must be institutionalized in a nursing home to receive 24-hour attention.

The court of appeal awarded $31,500.00 for Jordan's past, present and future physical and mental pain and suffering.[4] However, it denied an award for his loss of earnings following the 1965 accident, and it additionally denied an award for future medical expenses. We granted certiorari to review the denial of awards for these damages, in the face of the court of appeal finding of permanent and total disability.

### Loss of Earnings

In denying an award both for the loss of earnings between the accident and the trial and also for future loss of earnings after the trial, the court of appeal held that such loss was not proven with reasonable certainty. Essentially, any award at all was denied for this loss (as to which he, his

---

3. Under the determination we make, we do not reach the plaintiff's alternative contention that the court of appeal erred in not remanding this case to the trial court for additional testimony as to such undoubted losses, if it found the proof insufficient.

4. After the appeal was taken, but before judgment was rendered by the court of appeal, the plaintiff's curatrix (his wife) was substituted as party plaintiff, upon showing that the plaintiff had been interdicted subsequent to the trial court judgment. See La.C.C.P. Art. 684. Thereafter, proceedings have been continued for the plaintiff by his curatrix. For convenience, we shall continue to refer to the injured husband, who originally sued in his own name, as the "plaintiff."

wife, and his employer testified) because of his failure to prove it by corroborative evidence such as income tax returns or employment records.

In denying this award, the court of appeal sought to apply a line of jurisprudence developed by the intermediate courts to the effect that an uncorroborated general estimate by a plaintiff as to his loss of earnings *may* not constitute sufficient proof of such loss, where corroborative evidence is shown to be available but is not produced. The court relied upon Stevens v. Dowden, 125 So.2d 234 (La.App.3d Cir. 1960) and decisions therein summarized.

The cited decision itself demonstrates, however, that the principle does not provide a mechanical rule denying any recovery, whenever a plaintiff's own testimony as to his loss of earnings is not corroborated by records. There, the plaintiff's own detailed testimony was accepted as sufficiently proving his loss of earnings during a period of disability.

■ Other intermediate decisions likewise hold, correctly, that a claim for loss of earnings need not be proved with mathematical certainty, but only by such proof as reasonably establishes the claim. This may even consist only of the plaintiff's own reasonable testimony, if accepted as truthful; although of course the better practice is to introduce corroborating testimony. See, e. g.: Charles v. Phoenix Insurance

Co., 229 So.2d 467 (La.App.3d Cir. 1969); Hughes v. New Orleans Public Service, Inc., 221 So.2d 331 (La.App.4th Cir. 1969); Clouatre v. Toye Bros. Yellow Cab Co., 193 So.2d 344 (La.App.4th Cir. 1966); Colton v. Hartford Fire Ins. Co., 135 So.2d 489 (La.App.2d Cir. 1961).

There are, however, other intermediate decisions, similar to the present, which disallow any award for loss of earnings in the absence of records corroborating the plaintiff's testimony. These decisions seem to indicate that such testimony, no matter how unsuspicious nor how consistent with proven disability, can never by itself prove an earnings-loss with reasonable certainty. See, e. g.: Craig v. Burch, 228 So.2d 723 (La.App.1st Cir. 1969); Radecker v. Phillips, 223 So.2d 468 (La.App.4th Cir. 1969); Smith v. Brekeen, 216 So.2d 90 (La.App. 1st Cir. 1968).

In requiring this artificial prerequisite for recovery for loss of earnings, the courts so holding overlook fundamental general principles regulating the burden of proof and the award of damages in tort cases.

One injured through the fault of another is entitled to full indemnification for the damages caused thereby. La.Civil Code Art. 2315. Another general principle deduced therefrom and applicable here may be stated as follows:

■ Where there is a legal right to recovery but the damages cannot be exactly

estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited. This latter principle is also applicable, where the fact of loss of earnings or earning power, past or future, is proved, but not any exact amount. Goode v. Hantz, 209 La. 821, 25 So.2d 604 (1946); Clouatre v. Toye Bros. Yellow Cab Co., 193 So.2d 344 (La.App.4th Cir. 1966), certiorari denied 250 La. 270, 195 So.2d 147 (1967); Hidalgo v. Dupuy, 122 So.2d 639 (La.App.1st Cir. 1960), certiorari denied.

*The Present Award for Earnings and Future Medical Expenses*

In the present instance, the court of appeal held that the loss of earnings and the future medical expenses were not proved with sufficient certainty. It therefore denied recovery; even though it also held that the evidence did prove the plaintiff to be permanently and totally disabled by a mental condition, and that this disability had been caused or aggravated by the defendants' driver's tort.

■ In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter's fault; but proof need be only by a preponderance of the evidence, not by some artificially created greater standard. This burden of proof may be met by either direct or circumstantial evidence.

■ In describing this burden of proof, the courts sometimes speak of proof to a "reasonable certainty" or to a "legal certainty"; or of proof by evidence which is of "greater weight" or "more convincing" than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant's tort with "a fair amount of certainty". Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.

See: Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Perkins v. Texas and New Orleans Railroad Co., 243 La. 829, 147 So.2d 646 (1962). See also: Sanders, The Anatomy of Proof in Civil Actions, 28 La.L.Rev. 297 (1968); James, Civil Procedure, Section 7.6 at pp. 250–51 (1965); Prosser on Torts, Section 41 at pp. 245–46 (3d ed., 1964); McCormick on Evidence, Section 319 at pp. 676–77 (1954); Malone, Louisiana Workmen's Compensation, Section 252 at pp. 293–94 (1951).

The evidence in the present case shows the following:

*Loss of Earnings:*

The plaintiff testified at the trial and by his deposition (introduced into evidence by defendants, sec La.C.C.P. Art. 1428(2)) that he had been a carpenter for eleven years, that he was a member of the carpenter's union, and that at the time of the accident he was working at that trade for $100.00 per week. He also testified to earning $75.00 per month in a part-time bakery activity he engaged in with his wife. He was 60 years of age when injured.

At the time of the accident, he had been on a carpenter job with his present employer for about three weeks, having had to leave his immediately previous employer due to a strike. The last employer corroborated that he had employed the plaintiff Jordan at $2.00 to $2.50 an hour for two to three months prior to the accident. He also testified that Jordan was a good worker, and that Jordan had worked for him two or three other periods during the two years prior to the accident.

The plaintiff Jordan's wife testified that he worked regularly in construction work before the accident, in addition to operating the retail bakery business. She stated he worked at the latter on "his days off work, like rainy days," or in between one construction job and another * * * and also at night." The plaintiff's stepdaughter and his pastor both testified that, prior to the accident, Jordan had been a hardworking man.

All witnesses testified that Jordan had never returned to work following his injuries of April 23, 1965 right up through the trial of December 5, 1967. During almost all of this period he was under medical treatment for his various accident-caused injuries and disabilities. The evidence further shows he will never be able to return to work, due to his tort-caused condition.

This evidence as to Jordan's past employment record is uncontradicted. No attempt was made by cross-examination to question the accuracy of this uncontradicted testimony. We find no reason to question the proof of more-probable-than-not loss of earnings so made, simply because Jordan did not introduce his income tax returns or other records to substantiate whatever loss this testimony proved.[5]

5. The defendants took Jordan's discovery deposition in May, 1966, about 18 months before trial. Essentially all of the above information was there educed. The mentally unstable plaintiff was unable to estimate his earnings for the previous years, but he testified that he had filed income tax returns for 1962, 1963, and 1964. It occurs to us that, if the defendants seriously questioned the accuracy of this testimony of prior earnings, they had ample opportunity to secure opposing evidence. or access to Jordan's income tax returns for these prior years.

We conclude, therefore, that the plaintiff Jordan has proved a claim for loss of pre-trial and future earnings based upon the following facts:

■ He regularly worked as a carpenter at $100.00 per week. At age 60, he had at least five more years of working-life expectancy. Against this, the circumstance must be considered that construction work is not steady throughout the year, at least in the absence of more specific proof, due to inclement weather conditions, intervals between jobs for the various employers, and interruptions because of labor disputes.

Under all of these circumstances, an award of ten thousand dollars for the plaintiff Jordan's loss of past and future earnings is fair and adequate. (In somewhat similar circumstances, in Fontenot v. Grain Dealers Mut. Ins. Co., 170 So.2d 513, La.App.3d Cir. 1965, the appellate court limited a carpenter's award for two years' disability to $4,460.00 general damages. The evidence showed he made $3.50 per hour when he worked; but, in the absence of more specific proof of the regularity of the plaintiff's work, the court felt it appropriate so to limit the recovery.)

*Future Medical Expenses:*

The medical testimony is to the effect that the plaintiff Jordan is now a psychotic individual, mentally unstable, with some-times bizarre behavior and loss of memory. His condition will not improve.

The principal claim for future medical expenses is based upon the alleged need to place him in a nursing home at the stipulated cost of $325.00 per month. The only medical testimony on this is to the effect that, due to his mental condition, Jordan needs to be watched most of the time—he might get lost easily, for instance. The doctor testified that this was the type of care offered either by a family, or by a nursing home when a family was unable to give it. The medical consultants discussed institutionalization, the witness said, as depending on whether the family was able to take care of him.

The only other testimony on this issue was Mrs. Jordan's. She testified that she had not placed him in a nursing home because she could not afford to. She further testified: "There are times, Judge, when it is possible for me to handle him—now there are times when I can't, and during the times that I can with some help I would gladly keep him in the home."

■ In our opinion, this evidence proves that, more probably than not, the plaintiff Jordan will have to be placed in a nursing home from time to time due to his tort-caused mental condition. On the other hand, the evidence does not preponderantly show that this is necessary other than intermittently. Since there is

a legal right to recovery, although the damages cannot be exactly calculated, an award of seven thousand five hundred dollars for this loss is appropriate under the circumstances, including the plaintiff's twelve-year further life expectancy.

■ We should note that the plaintiff curatrix contends that we should notice the facts evidenced by the certified interdiction proceedings by which she was substituted as plaintiff for Jordan after his interdiction. These proceedings (ex parte, so far as the defendants) show that he was and has been confined in a nursing home since 1968.

However, we cannot consider such as evidence of tort-caused confinement. For one reason, appellate courts cannot receive evidence. Board of Com'rs. for Atchafalaya Basin Levee District v. St. Landry Parish School Bd., 242 La. 285, 136 So.2d 44 (1961).

■ Nor should we remand to permit proof of this greater loss which resulted after the trial court judgment. In tort cases, the award is based upon the evidence at the *trial* of all past, future, and prospective harms. Restatement of Torts, Section 910 (1939); Harper & James, The Law of Torts, Section 25.2 (1956). In

6. In compensation cases, due to the paternalistic purposes of the remedy, a more liberal policy is followed. Wade v. Calcasieu Paper Co., 229 La. 702, 86 So.2d

the appellate court, the award is reviewed based upon the evidence available to the *trial* court; to avoid the indefinite prolongation of litigation, the appellate court will not remand, save in extraordinary circumstances (not present here), to permit increase or reduction of damages on the basis of factual events occurring subsequent to the trial court judgment.[6] Dark v. Brinkman, 136 So.2d 463 (La.App.3d Cir. 1962), and authorities therein cited; Restatement of Torts, Section 910, Comment b.

*Decree:*

For the foregoing reasons, the decree of the court of appeal is amended to increase the award by an additional Seventeen Thousand Five Hundred ($17,500.00) Dollars, together with legal interest from date of judicial demand. The defendants-appellees are to pay all costs of these proceedings.

Amended and affirmed.

McCALEB, C. J., dissents being of the opinion that the judgment of the Court of Appeal is correct.

HAMLIN, Justice (dissenting).

540 (1956); Robinson v. Fidelity & Casualty Co., 181 So.2d 318 (La.App.3d Cir. 1965).

In this tort suit, the trial judge awarded plaintiff:

Personal injuries ........ $ 6,500.00
Special damages ......... 2,236.16
Total ................... $ 8,736.16

The Court of Appeal increased the award:

Personal injuries ........ $31,500.00
Special damages .......... 3,186.26
Total ................... $34,686.26
Deducting from this amount $ 8,736.16
I find an increase of ...... $25,950.10

in the award of the Court of Appeal.

In justifying the above increase, the Court of Appeal stated:

"With respect to plaintiff's claim for future medical expenses, we also conclude that plaintiff has failed to show with reasonable certainty what these expenses will be. The only evidence on this point is the testimony of the doctors that plaintiff's condition will not improve and that at some distant date it may be necessary to place him in a nursing home where he can receive twenty-four hour attention. This testimony does not support an award for future medicals.

"Lastly, we turn to the question of quantum for plaintiff's past, present and future physical and mental pain and suffering. Plaintiff was injured on April 23, 1965 and while he ultimately recovered from his whiplash injury his mental residuals have persisted with increasing severity. During the two years between the accident and the date of the trial plaintiff had been confined to a mental institution on two occasions, totaling three and one half months. The record is amply clear that he will never be able to return to nor enjoy the benefits of a natural and normal life. Considering all of the evidence and in an effort to do substantial justice under the circumstances we believe that he is entitled to an award as damages for such injuries in the amount of $31,500.00. See Faslund v. Kendrick, 169 So.2d 276 (1st La.App., 1964) and Allen et ux. v. Indemnity Insurance Company of North America, 137 So.2d 110 (3d La.App., 1962)."

The majority opinion amends the Court of Appeal award by an additional $17,-500.00, making a total award of $52,186.26, an increase of $43,450.10 over the $8,736.16 awarded by the trial judge, who saw and heard the witnesses.

With all due respect, this exceptional increase is an abuse of discretion.

Under the circumstances of this case, I am of the opinion that the amount awarded by the Court of Appeal should be accepted by this Court.

I respectfully dissent.

DIXON, Justice (concurring):

Although the opinion and the judgment reached are correct, the law teaching portion leaves a sense of unfulfilled expectation. Instead of clarifying the meaning of

"preponderance of the evidence," we say that it occurs when the "proof shows that the fact * * * sought to be proved is more probable than not."

Webster's Seventh New Collegiate Dictionary, G. & C. Merriam Company, shows:

**prob·a·bil·i·ty** \\,präb-ə-'bil-ət-ē\ *n* **1 :** the quality or state of being probable **2 :** something probable **3 :** a mathematical basis for prediction that for an exhaustive set of outcomes is the ratio of the outcomes that would produce a given event to the total number of possible outcomes **4 :** a logical relation between statements such that evidence confirming one confirms the other to some degree **prob·a·ble** \\'präb-(ə-)bəl\ *adj* [ME, fr. MF, fr. L *probabilis*, fr. *probare* to test, approve, prove — more at PROVE] **1 :** *supported by* evidence strong enough to establish presumption but not proof ⟨a ~ hypothesis⟩ **2 :** establishing a probability ⟨~ evidence⟩ **3 :** likely to be or become true or real ⟨~ events⟩ — **prob·a·bly** \\'präb-(ə-)blē, 'präb-lē\ *adv*

**syn** PROBABLE, POSSIBLE, LIKELY mean such as may be or may become true or actual. PROBABLE applies to what is supported by evidence that is strong but not conclusive; POSSIBLE applies to what lies within the known limits of performance, attainment, nature, or mode of existence of a thing or person regardless of the chances for or against its actuality; LIKELY differs from PROBABLE in implying either more superficial or more general grounds for judgment or belief.