CURRAULT, Judge.
On August 25, 1977, plaintiffs purchased a residence located at 848 Morningside Drive, Jefferson Parish, from Mr. and Mrs. Thomas I. Edkins. Pursuant to the terms of the purchase agreement, Mr. Edkins contracted with Orkin Pest Control Company to perform a presale termite inspection report. The inspection took place on August 16, 1977. A certificate was issued to Mr. Edkins and delivered to the petitioners at the act of sale on August 25, 1977.
Approximately seven months after the sale, extensive termite infestation and damage was discovered by the plaintiffs. Additional inspections were performed by Orkin and other pest control companies, all of which reported extensive termite damage. In July, 1978, plaintiffs filed suit in redhibition against French Market Homestead and for damages against Orkin Pest Control Company. The previous owners, Mr. and Mrs. Edkins, were joined as defendants by supplemental petition dated and filed January, 1980.
French Market Homestead was dismissed prior to trial pursuant to an exception filed alleging they were not the true vendor. The Edkins were dismissed as the result of an exception of prescription filed by them *604 as they were added as defendants more than one year from the date of the sale. The trial judge ruled that an action in redhibition must be commenced within one year from the sale in accordance with Civil Code Article 2534.
However, after trial on the merits, the court did find negligence on the part of Orkin and awarded damages to plaintiffs in the amount of $9,446.06.
The figure of $9,446.06 represents the costs of repairs made on plaintiff’s home as a result of the undiscovered presence of termites at the time of the sale. It is from this judgment that Orkin now appeals.
The trial court, by ruling in plaintiff’s favor, found that termite damage was discovered by the plaintiff approximately two to three weeks after the sale when Mr. Bortnick remodeled the garage. This discovery by the plaintiff, combined with proximity to the pre-sale inspection created, in the trial judge’s mind, an inference that active infestation existed at the time the termite certificate was issued and that the inspection was negligently performed resulting in damages to the plaintiff. These conclusions by the trial court were reached upon the testimony of mainly lay witnesses.
Plaintiff’s only expert witness was Paul Speth, a qualified building cost estimator and remodeling contractor. Mr. Speth was called to give an estimate of the cost of repair to the plaintiff’s house. Mr. Speth also testified, over opposing counsel’s objections, that the termite damage he found after tearing out Sheetrock appeared to be “old”, although he testified he really could not pinpoint how old. It is additionally observed from the record that Mr. Speth’s first visit to the Bortnick’s home was not until March 15, 1979, two years after the original Orkin inspection and nine months after the filing of the original suit. We believe it is equally important to note Mr. Speth has no formal training or any other qualifications concerning the habits, patterns, and life cycles of subterranean termites, and was neither submitted nor recognized as an expert in that field.
Plaintiffs offered no expert testimony whatsoever on any issue directly relating to the alleged liability of Orkin. We think this is peculiar under the circumstances since plaintiffs’ home had been inspected and treated by Terminix, and in addition to Orkin had also been inspected and proposed for treatment by Miller The Killer and James Pest Control. Yet no expert testimony from any of these sources who had first-hand information and knowledge about this property and its infestation and damage was produced by plaintiffs.
The plaintiffs offered no evidence, opinion or testimony whatsoever concerning the proper standards and/or methodology of conducting a pre-sale termite inspection in the Metropolitan New Orleans or Southeast Louisiana area; nor any evidence, opinion or conclusion that the inspection which was in fact conducted by Orkin was in any way improper, negligent, faulty or lacking in any respect; nor any evidence, opinion or testimony concerning the size of the termite colony, the extent of damage or that the infestation and/or damage existed at the time of the pre-sale inspection by Orkin; nor any evidence, opinion, or testimony approximating the time that the infestation and damages began; nor any evidence, opinion or testimony that, if such infestation and/or damage had existed at that time, it existed in such a way or to such an extent that it could or should have been visible and noticeable in a carefully and properly conducted inspection. The only testimony offered by plaintiffs that is in any way remotely connected with any such threshold issues was from plaintiffs’ building cost estimator Speth.
The testimony elicited by defendant showed that both the August 16, 1977 inspection and the second inspection done some seven months later were done by the same Orkin employee who testified in detail about his usual method of making an inspection on this type of house, that it was followed in both inspections that he made, and that he had no trouble whatsoever finding ample evidence of infestation and damage on the second inspection in contrast to the first where no such evidence was visible *605 or noticeable. He further testified that he works on a commission sales basis and that he is careful to inspect homes for termites and/or damages because it may result in a treatment sale for him. Plaintiff Mrs. Bortnick, who was present only at the second inspection, testified that this inspection was “very thorough” and described it at length. She also testified that his inspection was more thorough and detailed than any of the other three inspections she had made and that no other inspection revealed more than that made by the Orkin representative. Similarly, defendant Thomas Edkins testified that he was present during the entire pre-sale inspection, he estimated that the inspection took 30 to 45 minutes, and he described how the inspection was conducted including digging in spots around the exterior perimeter, use of a probe or pick in certain of the inside areas, and checking exposed wood framing in the garage area, all without incident or indication of infestation or damage.
Finally, Ed Faircloth testified as an expert with a broad range of both educational and on-the-job background, knowledge and experience in the termite and pest control field. He stated that a standard inspection of a slab home of this type would take approximately twenty minutes or so and he identified those visible signs of past or present termite activity that an inspector seeks out during his inspection. He stated that subterranean termite activity in the Metropolitan New Orleans/Southeast Louisiana area is at an almost dormant stage in mid-August (during the time of the pre-sale inspection) whereas it is at its peak from January through April (the second inspection was done March 29). Most significantly, he also testified that while it was theoretically possible that termites could have been active in the structure at the time of the pre-sale inspection, it was also very possible and entirely likely that the damage of which plaintiffs complain could have been caused after the inspection and sale. He gave no opinion as to the visibility of any such infestation or damage at the time of the pre-sale inspection other than his previous observation that activity at that time of the year in this area is at a near dormant stage.
The written reasons for judgment is void of any discussion or analysis whatsoever of the facts or testimony. Judgment is rendered against Orkin with the simple observation that, “Orkin’s negligence in their issuance of the certificate is obvious. ... ” We disagree and find it difficult to discover such obvious negligence.
In Jordan v. Travelers Insurance Company, 257 So.2d 995, 245 So.2d 151, 155 (La.1971), Justice Tate summarized the several judicial formulations of burden of proof in civil cases and concluded:
In Louisiana tort eases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter’s fault; but proof need be only by a preponderance of the evidence, not by some artificially created greater standard. This burden of proof may be met by either direct or circumstantial evidence.
In describing this burden of proof, the courts sometimes speak of proof to a “reasonable certainty” or to a “legal certainty”; or of proof by evidence which is of “greater weight” or “more convincing” than that offered to the contrary; or (in the ease of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant’s tort with “a fair amount of certainty.” Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.
It is clear that, after a review of the evidence submitted by plaintiffs, and of all of the evidence in the case, that plaintiffs have not borne their burden of proving that it is more probable than not that infestation and/or damage actually existed at the time of the pre-sale inspection, that it was of such a nature, location and extent that it *606 was visible upon inspection by a trained termite inspector, or that there was anything at all improper, lacking or inaccurate in the inspection which Orkin did conduct or the report which it rendered.
For the reasons assigned, the judgment appealed from is reversed and judgment is hereby rendered in favor of defendant and against plaintiffs, rejecting plaintiffs’ demands at their costs.
REVERSED.