SCHOTT, Judge.
In this appeal by plaintiff from a judgment in his favor he is seeking an increase in the amount awarded to him by the trial court. He contends that (1) the trial court erred in failing to award an item of $906 for special damages, being the cost of additional labor he was required to employ in his business operations as a result of his injuries, and (2) the amount of general damages was inadequate to compensate him for his bodily injury, present and future pain and suffering and mental anguish.
The accident occurred on May 17, 1969, when plaintiff’s truck was struck from the rear by the automobile of defendants. Plaintiff first sought medical treatment on May 21 when he was examined by Dr. Rufus H. Alldredge, an orthopedic surgeon.
Based on the testimony of the plaintiff at the trial on November 8, 1971, and the deposition of Dr. Alldredge, taken on November 17, 1971, the trial judge awarded to plaintiff $2250 for his bodily injury, mental anguish, pain and suffering, $313 for medical bill of Dr. Alldredge, $305 for truck rental and $243 for Ventura Auto Repair, or a total of $3111.
*919 SUMMARY OF PLAINTIFF’S TESTIMONY
The 48-year-old plaintiff is the sole proprietor of an air-conditioning and heating business which he has operated for 23 years. His work includes the servicing, repairing and installation of air-conditioning systems and requires him to climb ladders, work off of ladders, crawl into small tight spaces, lift and move heavy motors and equipment, handle pipes and fittings, weld and thread pipes. He returned to his work two days after the accident but was unable to do the greater part of his normal work. It was six weeks before he could return to the substantial performance of his duties. Medical treatment consisted primarily in injections of cortisone into his elbow and shoulders, and because these injections were extremely painful and would result in his inability to use his arm for two or three days thereafter he had these done on Saturdays so that he would not lose more time than necessary from his work. He lost some business because of his disability and turned some business away. He was required to hire employees to perform some of the work which he would have performed himself had it not been for his injuries. While he could not provide the Court with the exact amount he spent to hire additional labor “it would be a substantial amount.”
His testimony was corroborated somewhat by his 1968 and 1969 income tax returns which included an item of $625 for labor employed in 1968 as compared to $1531 for labor employed in 1969, and on this difference is based his argument that he should be awarded the additional $906. Although the same tax returns showed that his gross receipts for 1968 were $23,499 as compared to $25,172 for 1969, he testified that the difference for labor employed was not due to any increase in business but was because he could not do the work himself. Asked if he is able to do all of the work which he could do before the accident, plaintiff replied that he could not and
“because of the pain; that I don’t have the strength in my left arm without feeling severe pain in it. I just can’t pick up things like I could. I can’t pull. I cannot crawl like I could. I did have at one time a very substantial floor furnace business which I have practically given up, just have to tell customers I can’t handle them any longer.”
SUMMARY OF DR. ALLDREDGE’S TESTIMONY
When Dr. Alldredge first saw plaintiff on May 21, 1969, he found a slight healing laceration of the right side of the scalp requiring no treatment except for a tetanus toxoid shot, a marked contusion and abrasion with discoloration alongside the left calf, some complaint of pain and tenderness above the left knee, complaint of marked soreness at the right elbow. Plaintiff’s neck and back motions were normal and although plaintiff told him that he had initially experienced discomfort in the neck and back it had cleared up by the time of this first visit. X-rays of the knee and elbow were normal. At that time the doctor did not believe that the elbow and knee would require further treatment and he advised plaintiff to continue with his work and to return in a month for further check up before being discharged. But plaintiff returned on June 11 complaining of pain and soreness in the medial aspect of the left knee, pain in the neck and the muscles between the neck and the left shoulder, pain over the medial epicondyle of both elbows, worse on the left, soreness and tenderness on the left side of the neck in the trapezius muscle on the left, marked tenderness over the medial epicondyle of the left shoulder and some tenderness over the right shoulder. X-rays of the cervical spine and left elbow were normal and plaintiff was advised to return on Saturday, June 14, for an injection of cortisone into the left elbow. Dr. Alldredge saw the plaintiff on June 21 when plaintiff still complained of pain in the elbow but was given no injection. He returned on July *920 12 when the pain in the elbows had cleared completely with the only remaining pain being in the left knee. He was advised to continue to be active and to return in a month. Plaintiff did not return until January 31, 1970, at which time he complained only of pain in the medial aspect of the left elbow where the doctor found severe tenderness and diagnosed the problem to be epicondylitis which the doctor described as a painful condition over the bone on the side of the elbow. Cortisone injections were administered to the elbow on'January 31, February 21 and April 3. On the latter date, the doctor did not tell plaintiff to return for further treatment but did not discharge him either in view of the symptoms which he was still having. Shortly after the trial on November 12, 1971, Dr. All-dredge examined plaintiff who was still complaining of pain in the left side of his neck, in the muscles between the neck and his. left shoulder especially after strenuous work, and in the left knee. Knee motions were normal except for some crepitation and popping on extension and flexion expecially in the left knee and there was tenderness over the medial aspect of the left knee. There was one inch of atrophy of the left thigh and a fourth of an inch of atrophy of the left calf, which the doctor concluded was the result of lack of use for the reason that plaintiff was favoring the other leg because of trouble with the left knee. He diagnosed the plaintiff’s knee injury as traumatic arthritis and expected no improvement in this condition. X-rays of the cervical spine compared with those taken a year and a half previous showed a narrowing and degenerative change in the sixth cervical intervertebral disc space, a condition which might necessitate surgery in the future. The doctor concluded, “It is my opinion that he is partially disabled for the type of work he does and cannot do all of the other work he could before.” In his opinion all of these conditions were the result of plaintiff’s accident.
Considering the length of time during which plaintiff suffered from epicon-dylitis in the left elbow, the uncontradicted opinion of his physician to the effect that he probably suffered two permanent injuries in the form of a narrowing of the sixth intervertebral disc space and traumatic arthritis, and the physician’s uncon-tradicted opinion to the effect that plaintiff was partially disabled from his work 18 months after the accident would lead to a conclusion that the award of $2250 for general damages is grossly inadequate and should be substantially increased. On the other hand, an analysis of the doctor’s testimony reveals that his opinions and conclusions were almost completely based upon subjective complaints of plaintiff and his statements to the doctor as to the history and progress of his injuries. Although the trial judge had no advantage over this Court in evaluating the doctor’s testimony since it was taken by deposition, he did see and hear the plaintiff and was in the better position to evaluate his credibility not only in what he said on the witness stand but also in the effect to be given to his physician’s opinions where such were supported only by plaintiff’s statements to him. Considering all of these circumstances, substantial justice can be done by increasing the award for general damages to $4000.
With reference to the item claimed by plaintiff for expenses of $906 incurred in hiring additional labor to perform the work he normally performed himself, there is a preponderance of evidence to support plaintiff’s claim for this item and the judgment should be amended to include some amount to compensate him for same. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151; Hughes v. New Orleans Public Service, Inc., 221 So.2d 331 (Ct. of App. 4th Cir. 1969). Inasmuch as the plaintiff’s testimony that the item was required because of the pain and the disability he suffered and his testimony is corroborated by his physician’s testimony *921 and to some extent by his own income tax returns, it is reasonable to assess the item among the damages. In view of the fact that the trial judge made no mention of it whatsoever in his reasons for judgment it may be that the item was simply overlooked by him in making the award to plaintiff.
Accordingly, the judgment appealed from is amended and affirmed so that there is judgment in favor of plaintiff, John C. Britt, and against defendant, Maurice Bowler, individually, and as father and administrator of the estate of his minor son, Louis Bowler, and All State Insurance Company, individually and solidarity in the sum of $5767 with interest from date of judicial demand until paid, and for all costs including the costs of this appeal.
Amended and affirmed.