GARRISON, Judge.
Two circumstances of potential legal complication originated with this case, growing as it did out of Samuel Benjamin’s leg injuries received while working with steel beams in a railroad car in New Orleans. The first potential complication involved the multiplicity of other initial defendants with arguable causation roles — in connection with the shipment of the steel from Chicago down to New Orleans — prior to that of the New Orleans Public Belt Railroad, the last possessor of the well traveled box car at the time of the plaintiff’s accident. The second potential complication involved the fact that Benjamin was alone — with the consequent problem of an absence of eyewitnesses — at the time of the incident.
*334 The trial judge resolved these issues by granting judgment in favor of the plaintiff and against the New Orleans Public Belt Railroad. The financial breakdown of Benjamin’s judgment was: %9,000.00 for his pain and suffering and $2,707.68 for his loss of wages, making a total of $11,707.68. Legal interest from date of judicial demand, until paid, and all costs were granted to the plaintiff. Following submission to a five man panel of this court, we affirm the trial court’s resolution of the issues.
Initially plaintiff had sued other defendants as well. Elgin-Joliet-Eastern Railway Company (hereafter EJE) was dismissed when the trial judge maintained exceptions to the jurisdiction. No appeal was taken from this judgment. Following the trial, U. S. Steel Corporation and Illinois Central Gulf Railroad (hereafter ICG) were dismissed. No third-party petitions were filed in the suit and only Public Belt appealed. Plaintiff did not answer the appeal nor is quantum an issue.
Public Belt contended on appeal that the trial judge erred in his finding of negligence on its part and in finding no negligence on the part of U. S. Steel or Illinois Central. The appealing defendant further claimed that plaintiff’s contributory negligence or the negligence of his fellow employees should have prevented recovery.
FACTUAL SUMMARY: THE DEFECTIVE TAILGATE
The railway car, property of EJE, was loaded with steel beams from U. S. Steel at its plant in South Chicago, Illinois. EJE then delivered the car to ICG, and the car thereafter was transported by ICG to New Orleans to the Public Belt yard there. While in the possession of Public Belt, and during the course of the unloading process, the accident occurred.
At the time, Benjamin was in the railroad car unloading the steel beams. It was his responsibility to connect clamps (described by plaintiff as “dogs”) from a crane wire to each beam, to be elevated by the crane and removed from the car. Plaintiff’s foot was seriously injured when struck by an uncontrolled beam as it was being raised a short distance by the crane, in accordance with the established procedure, so as to confirm that there was sufficient balance — the clamps having been attached — to swing the beam out of the box car. Plaintiff was alone in the car at the time and the accident was not witnessed.
The tailgate of the railroad car was not firmly secured in an upright position but was wired only partially upright. At the time the car was being unloaded, one of the two wires apparently had broken and the tailgate was leaning inward from the top at a 45° or 60° angle to the car. There were 30 or 40 I-beams in the car, some of which were sixty feet in length and stacked at the bottom of the ear and some forty feet in length and stacked on top of the longer beams. The car’s length was seventy feet.
According to Benjamin’s testimony, immediately prior to the accident the tailgate was leaning in a tilted position on an angle resting on the longer beams at the bottom of the car. After he had clamped the crane wire in the middle of one of the beams preparatory to elevation, the beam, when moved by the crane, did not elevate with balance but unexpectedly slid backward toward the tilted tailgate. One end of the beam then was caught under the tailgate thereby elevating the other end and resulting in the uncontrolled spinning of the beam causing it to strike plaintiff’s foot. According to the plaintiff’s claim, the failure on the part of one or more of defendants to see the defective condition of the tailgate and to secure it firmly in an upright position was the proximate cause of the accident.
It was stipulated by all counsel that, if ICG’s employees were called to testify, they would state that they inspected the railway car while it was under their control and no exceptions were noted, this indicating that there were no defects in the railway car and that the tailgate was secured in an upright position while it was in ICG’s possession and interchanged to Public Belt. It was further stipulated that, if inspection by ICG’s employer had revealed that the tailgate had *335 been leaning into the car, the car would have been chalked and the tailgate would have been wired into an upright and secure position.
In a transcript which includes somewhat confusing testimony certain facts emerge. It is clear that the tailgate was leaning on an angle inside the railway car and was not secured in an upright position. It appears equally clear that, for whatever reasons, the tailgate had been inadequately wired, rather than firmly fixed in the normal manner at the rear of the box car, and had fallen into its slanted position at some stage of the loading process or some stage of transportation.
It is apparent also that plaintiff’s injuries resulted when his foot was struck by the steel beam as it was being elevated by the crane. Because the plaintiff was the only person in a position to see what occurred when the beam struck his ankle and his testimony at the trial to some extent was inconsistent with his earlier deposition, a description of the circumstances surrounding the accident is somewhat vague. We do not infer lack of credibility with regard to Benjamin’s testimony but only a recognition of plaintiff’s inability either to express precisely what happened or to see clearly what happened.
However, it is apparent that the most logical explanation of the incident nevertheless is the one described by Benjamin: that, as the beam was being elevated a short distance, one end caught under the leaning tailgate causing it to spin out of control and to strike him.
LEGAL CONSIDERATIONS
We are confronted with the determination as to whether the defective condition of the railway car’s tailgate resulted from Public Belt’s negligence, and/or the evidence of the other defendants, whether it was a cause in fact of the accident or, conversely, whether plaintiff or his co-employees were negligent. The last of these issues may be disposed of summarily. As the trial judge obviously concluded, there simply was no specific evidence from which negligence on the part of plaintiff’s co-employees could be concluded. With regard to the remaining considerations priority should be given to the issue of plaintiff’s contended contributory negligence because, in view of the state of the law when the accident occurred, an affirmative conclusion in this regard would end all other issues.

(a) Contributory Negligence

The trial judge plainly concluded that the plaintiff was not contributorily negligent. However, the evidence relating to the circumstances surrounding the accident requires further analysis in this regard.
Accepting plaintiff’s testimony that the steel beam, as it was being elevated, caught the leaning tailgate and thereafter spun out of control, we must dispose of the plaintiff’s possible responsibility reasonably to have anticipated or have foreseen the hazard. According to Benjamin, under ordinary circumstances, after the clamps were placed in the middle of the beam in order to assure balance, the crane operator was signalled to elevate the beam a short ways. If the beam appeared to be balanced, Benjamin then would move to a secure place and motion to the crane operator to lift it up from the railway car. In the absence of unexpected problems, the balanced beam should then be removed out of the car without incident.
In the instant case, however, Benjamin testified that after the clamps had been placed properly, again initially to ensure balance, the beam was elevated only for testing. However, it suddenly commenced to slide toward the tilted tailgate and, as described earlier in this opinion, the accident resulted.
Under ordinary circumstances, the tilted tailgate would not create any hazard to the worker placing the clamp on the beams inside the railway car. This conclusion is supported by the testimony of the crane operator and another co-worker both of whom testified that after the accident and plaintiff had been removed to the hospital, *336 they returned to the railway car and safely removed the remaining beams, even though the tailgate remained in a tilted, angled position. Further, Benjamin testified that he had experience unloading steel beams, apparently without incident, while working on the river front.
Nevertheless, considering the evidence as a whole, we cannot conclude that it was foreseeable that Benjamin anticipate that the tilted, angled tailgate would constitute a hazard to the removal of the beam.
Accordingly, we conclude that no showing was made of plaintiff’s contributory negligence.

(b)Liability of the Defendants other than the New Orleans Public Belt Railroad

U. S. Steel: Although not clear from the record, the implication is that the EJE railway car was loaded with the I-beams by U. S. Steel employees at its Chicago plant. The evidence is clear that the beams were properly stacked in accordance with accepted methods with the longer beams stacked at the bottom of the car and the shorter beams on top. There exists no evidence in the record from which a conclusion could be reached finding U. S. Steel negligent or that U. S. Steel’s action in any way was a cause in fact of plaintiff's injury. Accordingly, U. S. Steel properly was exonerated from liability by the trial judge.

EJE: This defendant was dismissed on exceptions to the jurisdiction. No appeal was taken and that judgment is final.
ICG: A more serious area of concern is the question of ICG’s liability. Absent from the record is any evidence relating to the time and circumstances surrounding the wiring of the tailgate of the railway car. We are not informed whether the tailgate was wired in an upright secured position at the U. S. Steel yards or whether it was wired while the car was in possession of EJE or whether it was wired at any other location. We do have the benefit of the stipulation that the railway car was inspected by ICG employees when it was interchanged to them and no defects were noted regarding the security of the tailgate when they received the railway car. We also have the benefit of the stipulation that at the time Public Belt received the car from ICG, no exceptions were noted with regard to such physical security, a circumstance which would tend to indicate upright and secured position when it was interchanged to Public Belt. Considering these stipulations together, it appears reasonable to conclude that the tailgate was secured in an upright position when it came into the position and control of Public Belt. Under these circumstances we cannot conclude that the trial judge erred when he found, as necessarily he must have found, that no showing was made of negligence, which was a cause of plaintiff’s injury, on the part of ICG. Accordingly, we do not disturb the judgment exonerating ICG from liability.

(c)Liability of Public Belt

If we accept the veracity and truthfulness of the stipulation resulting in the exoneration of ICG from liability, and we accept the truthfulness of the stipulation resulting in a conclusion that the tailgate was in an upright position when placed in Public Belt’s possession and control, then we are left with the determination that any wiring, if pre-existing, either broke or became disconnected while under Public Belt’s control or, if that wiring was done after Public Belt acquired control, it was done inadequately. Unfortunately, the record is again devoid of any evidence relating to the condition of any wire when the railway car was in transit. Presumably, an inspection of the car, the tailgate and the wire would or should have revealed to Public Belt the weaknesses or defects in the wire which caused the tailgate to lean at so marked an angle within the railway car. Accordingly, we conclude that the apparent failure of Public Belt properly to inspect the wire securing the tailgate constituted negligence amounting to a cause in fact of Benjamin’s injury.

(d)Res Ipsa Loquitur

The essential resolution of this case then, in the regard of this opinion, is that *337 the plaintiff Benjamin established the case that the defective tailgate, which defect developed during the car’s possession by Public Belt, was a cause in fact of his accident. Conversely, we conclude that the remaining defendant did not carry its burden of proving Benjamin’s contributory negligence. In short, the defendant’s burden to reverse the trial judge was not carried.
Nevertheless, it would not be realistic to fail to acknowledge that in this particular case the issue of the burden of proof was a close one. Understandably, the most conscientious evaluator considering the unobserved, traumatic incident might have difficulty with the vexing closeness in weighing the ultimate burden of proof.
Under our legal system the mere closeness of an issue cannot allow it to remain unresolved. In this case, a second basis exists for concluding that Public Belt is liable to Benjamin for his injuries and it is adopted by this opinion as an alternate and additional basis for its judgment. That is the applicability of the doctrine of res ipsa loquitur.
Even if it be concluded, for the sake of argument, that the burden of proof (which this opinion regards as carried by plaintiff’s testimony) is too close for comfort, the doctrine provides a formulation applicable to the aforedescribed evidence as a whole which nonetheless results in the conclusion that there must be judgment against Public Belt and for the plaintiff.
In Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972), on rehearing, Justice Tate’s review of the jurisprudence with regard to the issue of res ipsa loquitur contains portions which so aptly apply to the instant case that they require no further comment:
“Recently in Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151, 155 (1971), we summarized the several judicial formulations of this burden of proof in civil cases and concluded:
‘In describing this burden of proof, the courts sometimes speak of proof to a “reasonable certainty” or to ‘legal certainty’; or of proof by evidence which is of ‘greater weight’ or ‘more convincing’ than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant’s tort with ‘a fair amount of certainty’. Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not ...’
In this respect, the principle of ‘res ipsa loquitur’ (the thing speaks for itself) sometimes comes into play as a rule of circumstantial evidence, whereby negligence is inferred on the part of a defendant because the facts indicate this to be the more probable cause of injury in the absence of other as-plausible explanation by witnesses found credible.6, Pilie v. National Food Stores of Louisiana, 245 La. 276,158 So.2d 162 (1963); Larkin v. State Farm Mutual Auto Ins. Co., 233 La. 544, 97 So.2d 389 (1957); Malone, Res Ipsa Loquitur and Proof by Inference, 4 La.L. Rev. 70 (1941); Comment 25 La.L.Rev. 748 (1965). Thus, by this principle where properly applied, the circumstantial evidence indicates that the injury was caused by some negligence on the part of the defendant, without necessarily proving just what negligent act caused the injury.. .”

In conclusion, this court affirms the conclusion of the court below, confirming the granting of judgment against Public Belt and for the plaintiff in the amount of $9,000.00 for the latter’s pain and suffering and $2,707.68 for his loss of wages, adding up to a total of $11,707.68. with legal interest from date of judicial demand, until paid, and for all costs.
AFFIRMED.
GULOTTA and REDMANN, JJ., dissent and assign written reasons.