401 So.2d 368 (1981)
Craig D. VEGA
v.
STATE FARM AUTOMOBILE INSURANCE COMPANY.
Craig D. VEGA, Individually and As the Administrator of the Estate of His Minor Son, David Vega
v.
E. J. RICHARDELLE, Individually and As the Administrator of the Estate of the Minor, James J. Richardelle, Katherine C. Richardelle, and State Farm Mutual Auto Insurance Company.
Nos. 13979, 13980.
Court of Appeal of Louisiana, First Circuit.
April 13, 1981.
*370 Larry Main, Slidell, for plaintiffs-appellants in Nos. 37095 and 37970 Craig D. Vega, et al.
Stanley L. Perry, Galliano, for plaintiffs-appellants in No. 37969 Craig D. Vega on Behalf of the Interdict.
L. Albert Forrest, New Iberia, for defendant-appellee in Nos. 37095, 37970 and 37969 State Farm Mutual Insurance Co.
Robert B. Butler, III, Houma, for third party defendants-appellees and defendants in Nos. 37095, 37969 and 37970 E. J. Richardelle and State Farm Mutual Insurance Co.
Lloyd T. Bourgeois, Thibodaux, for third party defendants-appellees and defendant in Nos. 37095, 37969 and 37970 Craig Vega and State Farm Mutual Insurance Co.
Francis Dugas, Thibodaux, for defendant-appellee in No. 37970 E. J. Richardelle.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
These consolidated tort cases arise out of a head-on motor vehicle collision on Louisiana Highway 1 in Cut off, Louisiana on August 10, 1977. Five cases were filed originally. Three were tried and two are before us on appeal. The issues on appeal concern quantum, loss of earnings and insurance coverage.

THE FACTS
Craig D. Vega was driving south on La. 1 in the early evening of August 10, 1977. With him in the vehicle were his wife, Diane, and their minor son, David. Heading northbound at the same time was a vehicle driven by James Richardelle, the minor son of E. J. and Katherine Richardelle. A head-on collision occurred when the Richardelle vehicle apparently crossed the center line and struck the Vega vehicle. The Vega vehicle overturned in the path of a third vehicle, and was struck again.
As a result of the accident, Diane Vega was rendered a quadraplegic with serious brain damage. She is permanently disabled. Craig Vega sustained compression fractures of the sixth and eighth thoracic vertebrae, while young David escaped with a minor head injury.
Vega instituted three suits individually, as administrator of the estate of his minor son and as curator of his wife, who had been interdicted because of her injuries. He sued the Richardelles individually and as the administrator of the estate of their minor child. He also sued State Farm Mutual Automobile Insurance Company as the liability and uninsured motorist (UM) insurer of the Richardelles, as his own UM carrier and as his own med-pay carrier.
The trial court rendered judgment for $135,000.00 in the suit brought by Vega on behalf of his wife. Of that sum, $50,000.00 (the policy limits) was assessed against State Farm as liability insurer of the Richardelles; $75,000.00 was assessed against three UM policies owned by Vega, each of which provided $25,000.00 per person coverage and $50,000.00 per accident coverage under the UM provisions;[1] and $10,000.00 was assessed against Mr. Richardelle individually, the trial court having found that this amount was the most Mr. Richardelle could afford to pay. This judgment was not appealed.
In the suit by Vega for his own injuries and damages, for his wife's medical expenses and for his son's injuries, the trial court first awarded Vega $121,500.00, which represented $15,000.00 in general damages for Vega's back injury, $990.28 for Vega's own medical expenses and $105,509.72 for *371 past and future medical expenses for his wife. However, on a motion for new trial, the trial court reduced the award to $15,990.28, the amount awarded for Vega's own injury and medical expenses. The amended judgment apparently was based on the findings that the limits of liability for Diane Vega's injury and medical expenses already had been reached under the Richardelle liability policy and under the Vegas' three UM policies. In neither the first nor the amended judgment did the trial court allow the plaintiff's claim for $5,250.00 for lost income allegedly resulting from the hiring of eight part time workers to help run the plaintiff's ice packaging business while the plaintiff was disabled. The court found the plaintiff failed to prove his claim. A $3,500.00 judgment was also rendered for the minor son's injuries. On appeal in this court, Vega claims the trial court erred in awarding only $15,000.00 in general damages for his own back injury, in refusing to award a sum for loss of income and in failing to allow Vega separate coverage under the three UM policies for the medical expenses of his wife.
In the third suit filed by Vega, No. 13979, under the medical payments coverage in his three policies, the trial court rejected all demands. The court found that the $5,000.00 medical payment limit in the policy covering the vehicle involved in the accident had been exhausted by former payments for Diane's care. The $25,000.00 medical coverages in the other two policies were unavailable to Vega because these policies could not be stacked. Vega appeals from this judgment contending he is entitled to coverage as a separate person under the med pay provisions. He also claims coverage under a "supplementary payments" clause in the Richardelle's policy.

ISSUES
The issues on appeal are whether the trial court erred:
(1) In awarding only $15,000.00 in general damages for Vega's back injury;
(2) In refusing to award a sum for loss of income;
(3) In refusing to allow Vega to recover personally under the three UM policies for amounts expended or to be expended for his wife's medical care;
(4) In refusing to allow Vega to recover personally under the medical payment provisions of his own policies for amounts expended or to be expended for his wife's medical care; and
(5) In failing to apply the "supplementary payments" clause in the Richardelle's policy.

QUANTUM
Evidence at trial reveals that Vega sustained a painful compression fracture of the sixth and eighth thoracic vertebrae, but without any cord damage. Dr. Brian Huncke, the attending orthopedic physician, testified by deposition that Vega has a five percent permanent disability as a result of the back injury. Vega spent about two weeks in the hospital and had to wear a Jewett brace for about three months. He was physically unable to return to work for about two months.
In a recent case before this court, we attempted to explain the scope of appellate review of general damage awards. Hanzy v. Sam, 385 So.2d 355 (La.App. 1st Cir. 1980) writ denied, 386 So.2d 357 (La. 1980). Before an appellate court can raise or lower a trial court's award, the appellate court must make an articulated finding that the trial court abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). Unless this initial finding can be made, damage awards in other seemingly similar cases are not pertinent. The trial court's award in this case was clearly within the bounds of that court's discretion. It does not strike us as being either too high or too low. It does not shock our consciences, and it will be affirmed.

LOSS OF INCOME
Vega's claim for $5,250.00 in lost income was based on the sums he paid eight individuals who allegedly had to be hired in *372 the ice packing business to take the plaintiff's place. As proof of this claim, only the plaintiff's testimony was presented. Vega identified a handwritten notation in which he listed the names of the eight helpers, the number of hours worked and the amounts paid each worker. He testified that these amounts would not have been expended but for the accident in which he was injured. No corroborating testimony concerning this issue was presented, and no records concerning the payments were kept because the wages were paid in cash. On appeal, the plaintiff claims that the fact that the money was spent is proof that a loss of income occurred.
The trial court rejected this claim, stating:
"The only evidence that the court recalls as being introduced in support of this claim was a self-serving, uncorroborated, handwritten list of people plaintiff said he employed to assist in the conduct of his business because of his inability to do the physical work. The list indicated that he had paid some $5,250.00 in salaries to some eight people who would not normally have been in his employ. However, his testimony that it was necessary to employ these people and his testimony to the effect that he paid the salary set out therein are not proof that he suffered any loss. It may well be that his income increased during this period. There was no evidence introduced or business records introduced showing his average monthly net income prior to the accident as opposed to his average monthly net income subsequent to the accident and prior to his medical release to return to work. Without some evidence or proof that he suffered a loss of income, as logical as it would seem that he did, there is no way an award can be made for this item that would be anything more than speculation on the part of the court. For lack of evidence in support of this contention, this claim is therefore denied."
In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971), the court held that a claim for loss of earnings need not be proved with mathematical certainty, but only by such proof as reasonably establishes the claim. Such proof may consist solely of the plaintiff's own reasonable testimony, although the better practice is to introduce corroborating testimony. The court also held that where there is a legal right to recover loss of income but where the amount of loss cannot be exactly estimated, the fact of loss of earnings, if established, is enough to allow recovery. The courts in such cases have reasonable discretion to assess damages based upon all the facts and circumstances of the case. The Jordan court went on to award the plaintiff $10,000.00 for past and future loss of earnings based upon the testimony of the plaintiff, a former employer and plaintiff's wife.
Somewhat more strict in its view is the holding in Peoples Moss Gin Co., Inc. v. Jenkins, 270 So.2d 285 (La.App. 3rd Cir. 1972), wherein the court held that an uncorroborated general estimate as to a party's loss of earnings or profits is not sufficient proof of the loss where corroborative evidence is shown to be available and is not produced. 270 So.2d at 288.
The Jordan case, of course, is entitled to greater weight in this court than the Jenkins case. We find that plaintiff has proved he has a legal right to recover income which he lost as a result of the accident. The reasoning of the trial judge that proof of payment is not proof of loss is in error. Absent the accident, there would have been no need for Vega to spend this money. The facts and circumstances of this case support an award of $5,250.00 for past lost income.

UM COVERAGE
Vega claims that either he, individually, or the marriage partnership, as an entity, should be allowed to recover for medical expenses incurred on behalf of his wife. He contends that while the UM coverage has been exhausted as to his wife's injuries, coverage is still available under the UM provision for his or the partnership's damages in connection with medical payments for the wife's injuries. Vega is not claiming *373 UM coverage for his own medical expenses, as these expenses have been satisfied by the liability insurance on the Richardelle vehicle. He is claiming that with the 25/50 UM limits on each of his three vehicles, $25,000.00 remains under each UM policy to satisfy what he asserts are his own separate damages as head and master of the community.
A pertinent policy provision concerning plaintiff's claim is found in each of the three policies under the UM coverage heading. Though the wording in one policy is not identical to that in the other two, the phrasing is very similar and the following provision is applicable to all three policies:
"Limits of liability. (a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to `each accident' is the total limit of the company's liability for all the damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as a result of any one accident."
The issue before us under the policy provision quoted above was addressed in Graham v. American Casualty Company of Reading, Pennsylvania, 261 La. 85, 259 So.2d 22 (1972). The court in Graham held that a father seeking medical expenses for his daughter's injuries under a UM policy was precluded from recovering where the "per person" limits of the UM coverage had already been exhausted on the daughter's general damages. "Since the bodily injury liability is $5,000.00 for each person, [the] father cannot also recover for medical expenses which would permit recovery in excess of the combined policy limits," the court stated. 261 La. 85, 259 So.2d at 25.
In Crenwelge v. State Farm Mutual Automobile Insurance Company, 277 So.2d 155 (La.App. 3rd Cir. 1973), the court followed the Graham rationale and prohibited the father from collecting medical expenses incurred on behalf of his daughter when the UM "per person" coverage had already been exhausted on other damages awarded for the daughter's injury.
Under the above quoted policy provisions and the cases which interpret it, when the "per person" limits of UM coverage have been exhausted because of one person's injuries, other persons are precluded from collecting additional sums under the UM coverage for amounts expended by them on behalf of the person whose damages have exhausted the "per person" UM coverage. Based on the policy provision and the jurisprudence, there is no UM coverage available to Vega for amounts expended by him for the medical care of his wife, Diane, since her injuries have already consumed the liability limits under the UM "per person" coverage.

MED-PAY COVERAGE
Vega claims that although the $5,000.00 per person coverage under the med-pay provision of the policy covering the car in which his family was riding at the time of the accident has been exhausted, there is medical pay coverage of $25,000.00 under each of the other two policies he owns. He contends that these policies should be stacked unto the other policy so as to allow him up to $50,000.00 for medical payments incurred on behalf of his wife. He contends that since he is legally obligated as head and master of the community to pay the medical, hospital and drug expenses of his wife he should be considered a "person" within the meaning of the policy so as to allow him to recover. He further contends that the medical pay provisions in the policies are ambiguous.
Under the policy insuring the vehicle in which the Vegas were riding at the time of the accident, State Farm agreed to pay medical payments under the following provision:

*374 "COVERAGE C-Automobile Medical Payments. To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, and dental services, including prothetic devices, and necessary ambulance, hospital, professional nursing and funeral services;
"Division 1. To or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon or while entering into or alighting from the automobile, provided the automobile is being used by the named insured or his spouse if a resident of the same household, or with the permission of either; ..."
By its very terms, the medical payments coverage is limited to bodily injury, sickness or disease suffered by a person as a result of the accident. Vega is not claiming coverage under this section as a result of his own injuries, but solely as a result of payments he has had to make on behalf of his wife. He is precluded from recovery under this policy provision and, for the same reasons, is precluded from recovery under his other policies even if stacking were allowed. We know of no law, nor have we been cited any by plaintiff, that would allow stacking of the medical payments coverage.

SUPPLEMENTARY PAYMENTS
Finally, plaintiff claims coverage under the following clause:
"SUPPLEMENTARY PAYMENTS. To pay, in addition to the applicable limits of liability: ... (c) Expenses incurred by the insured for such immediate medical and surgical relief to others as shall be imperative at the time of an accident involving an automobile insured hereunder and not due to war."
Vega claims that this clause is a stipulation pour autri or a stipulation in favor of a third person. The third person, he claims, is his wife Diane. Since the medical expenses Vega incurred on behalf of Diane were immediately imperative at the time of the accident and continued to be imperative because Diane's condition did not change, Vega claims that he should be allowed to recover under this clause.
However, as the defendant points out in brief, this clause, otherwise known as the "good samaritan" clause, is designed to reimburse an insured for expenses incurred on behalf of another party who does not qualify as an insured under the policy contract. Diane Vega certainly qualified as an insured under the three UM policies owned by the plaintiff. Additionally, neither Craig nor Diane Vega can receive payments under this provision under the Richardelle policy because there were no expenses incurred by the insured under that policy for immediate medical and surgical relief to others. There was no evidence that the Richardelles incurred any expense in giving medical or surgical treatment to anyone involved in the accident at issue in this case. Plaintiff's argument, therefore, must be rejected.
Therefore, for the above and foregoing reasons, the judgment rendered in appeal number 13980 is amended to award plaintiff, Craig Vega, the sum of $5,250.00 for loss of income as against State Farm Mutual Automobile Insurance Company as liability insurer, and in all other respects and as amended, both appeals are affirmed at defendant-appellee's costs.
AMENDED AND AFFIRMED.
NOTES
[1] Two of the policies were "stacked" onto the policy providing UM coverage on the vehicle within which the Vegas were riding. At the time of this accident, stacking was still allowed under the law.