DOMENGEAUX, Judge.
The issue in this suit is whether an underinsured motorist insurance policy provides $100,000.00 for each person in an accident or whether it provides a limit of $100,000.00 per accident.
This suit arose out of an automobile accident which occurred on April 4, 1983. At the time of the accident, James Hemphill was driving a vehicle owned by him and insured by Liberty Mutual Insurance Company. There were four passengers in the car. The Hemphill vehicle, which was traveling on U.S. Highway 165, collided with another vehicle, which was underinsured. James Hemphill and the four passengers were each injured in the accident.
In June, 1984, Liberty Mutual filed this concursus proceeding depositing into the registry of the court $100,000.00 plus interest, claiming the sum to be the total coverage available under James Hemphill’s policy. Named as defendants in the concursus proceeding were James Hemphill, Charles Hemphill, Carolyn Hemphill, Jacquelyn Leach, and Lorene Goins.
In October, 1984, Charles Hemphill, Carolyn Hemphill, Jacquelyn Leach, and Lorene Goins, the four passengers, filed suit for declaratory judgment against Liberty Mutual and James Hemphill seeking an interpretation of the provisions under the Liberty Mutual policy which limits James Hemphill’s uninsured motorist coverage. The two suits were consolidated for trial on the merits, and remain so on appeal.
After trial, the district court rendered judgment declaring that the Liberty Mutual policy provides coverage of $100,000.00 for each person in the accident.
The issues presented in the two suits are identical, that being whether the uninsured motorist provision of the policy provides $100,000.00 for “each person” or $100,-000.00 for “each accident”. For that reason, disposition of the issue will be made in this case, Liberty Mutual Insurance Co. v. James Hemphill, No. 86-788, with a separate decree being rendered in Charles Hemphill, et al v. Liberty Mutual Insurance Co., 510 So.2d 1390 (La.App. 3rd Cir.1987).
A review of James Hemphill’s insurance history with Liberty Mutual is relevant. Liberty Mutual sold automobile liability insurance to James Hemphill as early as 1973. At that time, Mr. Hemphill rejected uninsured motorist coverage. At a later date, however, uninsured motorist coverage was provided to Mr. Hemphill, purportedly with $10,000.00 limits. In 1982, Mr. Hemphill raised the liability coverage limits on his policy to $100,000.00 for each occurrence. However, Liberty Mutual did not obtain from Mr. Hemphill, in writing, a selection of lower uninsured motorist limits, as required by La.R.S. 22:1406(D)(l)(a). The policy continued to indicate that Mr. Hemphill’s uninsured motorist coverage remained at the lower $10,000.00 limit.
After the April 4, 1983 accident, Liberty Mutual issued a policy endorsement raising the limits of Mr. Hemphill’s uninsured motorist coverage. This coverage was applied retroactively to include the time of the accident. The dispute here arose out of the interpretation of the coverage retroactively applied by this endorsement.
Liberty Mutual contended at trial that La.R.S. 22:1406(D)(1)(a) mandates uninsured motorist limits equal to the policy’s liability limits when the insurer fails to secure, in writing, a selection of lower uninsured motorist limits at the time liability limits are raised. In this case, James Hemphill’s liability insurance was limited to $100,000.00 per occurrence. Liberty Mutual asserted that, in issuing a policy endorsement providing higher uninsured motorist coverage retoactively to the time of the accident, it was documenting the limits required by statute, which were $100,- *1388 000.00 per occurrence, so that uncollected premiums could be charged for the retroactive coverage.
The occupants of the car, on the other hand, contended that the policy endorsement created uninsured motorist coverage of $100,000.00 per person, irrespective of what was required under Louisiana law.
After trial, the district judge rendered judgment declaring that the policy endorsement provided uninsured motorist coverage limits of $100,000.00 for each person injured in the accident. In reaching this conclusion, the district judge concluded that the uninsured motorist provision in the endorsement was ambiguous, and interpreted the ambiguity in favor of the insured.
The provision in the Hemphill endorsement providing the limits of liability states the following:
[[Image here]]
Also with regard to uninsured motorist coverage, the special state provisions contained in the body of the policy provide the following:
(C) The limits for Uninsured Motorist Coverage are $5,000.00 “each person”, which shall be the limit of the company’s liability for all damages because of bodily injury sustained by one person as a result of any one accident, and $10,000.00 “each accident”, which, subject to the above provision respecting “each person”, shall be the total limit of the company’s liability for all damages because of the bodily injury sustained by two or more persons as the result of any one accident.
This provision, however, is subject to endorsement 2215A, which declares that the “amount indicated in the ‘Limits of Liability’ provision as applicable to each accident is replaced by the amount indicated in the declarations.”
Liberty Mutual argues that the “each person” limitation applies when only one person is involved in an accident, and that the “each occurrence” limitation applies when more than one person is involved in an accident. However, the numerous cases which Liberty Mutual cites for this proposition are not applicable. In the situations presented in those cases, the policies provided specific limits for “each person”, and separate and greater limits for “each accident”. For example, in Vega v. State Farm Automobile Insurance Company, 401 So.2d 368 (La.App. 1st Cir.1981), the uninsured motorist limits were $25,000.00 for each person and $50,000.00 for each accident. In this type of situation, the policy clearly limits the recovery of a particular individual to the “each person” limit, whether the accident involved one person or more than one person. The policy also limits the total recovery to the “each occurrence” limit, which is also clearly shown.
In this case only one figure appeared under the uninsured motorist heading, rendering the provision ambiguous. It is not clear whether the limit is applied to each person, each accident, or both.
Liberty Mutual argues that the slash mark (called a virgule) separating the each person and each accident provision clearly indicates that the $100,000.00 limit is applied to each person and each accident. While this is one possible interpretation, we also find that the slash could also be simply a divider intended to separate the respective limits. Viewed in this way, the first figure would give the limits for “each person” and the second figure would define the limits for “each accident”. Since only one figure was given in this case, it is not unreasonable to associate that figure with the “each person” limit. Viewing the slash as simply a divider between the respective limits, a second figure would be expected. *1389 However since a second figure was not presented in this case it is unclear exactly what the insurer intended. In any event, there are at least two interpretations which can be given to the provisions as presented here.
Therefore, as there is more than one interpretation which can be given to the policy’s language, we conclude that the trial court did not err in finding the provisions to be ambiguous.
The established rule in Louisiana is that any ambiguity as to the meaning of a provision in an insurance policy must be construed liberally in favor of the insured and against the insurer. When the ambiguity relates to a provision which limits liability under the policy, the law requires that the contract be interpreted liberally in favor of coverage. Credeur v. Luke, 368 So.2d 1030 (La.1979). Therefore, the district court correctly interpreted the ambiguous provision against Liberty Mutual, finding the limits of coverage to be $100,000.00 for each person in the accident.
Having concluded that the policy was ambiguous and properly construed in favor of the insured, we need not address Liberty Mutual’s contention that the district judge improperly considered parol testimony to modify the terms of the written insurance contract, in violation of La.R.S. 22:628. Consideration of this issue would not change the result in light of our finding that the policy language is ambiguous.
Therefore, for the above and foregoing reasons, the district court judgment is affirmed.
Costs on appeal are assessed against Liberty Mutual.
AFFIRMED.
GUIDRY, J., dissents and assigns written reason.