SCHOTT, Judge.
This is a suit for damages sustained by plaintiff, Linda Hobbs, in an automobile accident which occurred on March 4, 1978. Defendants are George Oliver, Jr. and his insurer, State Farm Mutual Automobile Insurance Company. From a judgment in favor of plaintiff for $12,000 for general damages and $5500 for lost wages, plaintiff has appealed and defendants have answered the appeal. Quantum is the only issue before the court.
Plaintiff testified as follows: Several hours after the accident her chest was hurting and that night her wrist started hurting. The following morning the wrist hurt and was stiff so she got a wrist bandage for it. She first saw a doctor, her family physician, Dr. Rodney Young, on March 13, complaining about her chest and wrist. He prescribed medication and hot baths. She returned to him on March 20 and March 29, still complaining of her wrist, and he referred her to Dr. George Cary, an orthopedist. He put her arm in a case and gave her cortisone shots. She is a hair dresser and runs her own business. The wrist problem hampered her in her work. Even at the time of the trial in 1981 the wrist still swelled and would pop and crack interfer-ring with her work.
Dr. Jung testified that he saw plaintiff on March 6 and found tenderness in her neck, chest and back. He diagnosed an acute cervical strain. She said nothing about her wrist in this visit or in the subsequent visit of March 20. The first time she complained about her wrist was on March 29.
The question of whether plaintiff injured her wrist in this accident was a threshold issue .to be resolved by the trial judge since virtually all of plaintiff’s damages were related to the wrist injury as opposed to the other relatively minor injuries. Plaintiff’s testimony that the wrist was hurting the day after the accident and that she purchased a wrist band for it was corroborated by that of her husband and a friend. Dr. Cary gave a plausible explanation as to how such a wrist injury could result from a rear-end collision. The trial judge was aware of the contradiction between plaintiff’s and Dr. Jung’s testimony as to whether or not she complained about her wrist to him. He likewise had the benefit of Dr. Jung’s testimony that in all probability he would have recorded such a complaint had one been made. The trial judge resolved this factual conflict in favor of plaintiff and *710 specifically found that the wrist injury was a result of the accident.
Defendants would have us reverse this finding because of Dr. Jung’s testimony that plaintiff did not complain about the wrist until March 29, along with some minor discrepancies in plaintiff’s testimony. For us to do so would require an invasion into the almost exclusive province of the trial court to weigh the credibility of witnesses who testified before him. He must have concluded that Dr. Jung’s attention was focused on plaintiff’s neck and breast problems to the extent that the wrist was not of great significance to him at the time. We are compelled to conclude that the trial court’s finding was not clearly wrong and that the wrist injury was caused by the accident.
Dr. Cary testified as follows: Plaintiff had tenderness and a popping or cracking when the wrist was turned. X-rays were negative and he diagnosed a subluxation of an extensor carpi ulnaris tendon. When she returned to him on April 5 the discomfort and popping were still present and she was placed in a cast to be removed in two weeks. The cast was adjusted on April 8 and was removed on April 19 when some resolution of her tenderness was noted and she was started on light activities but advised to avoid heavy lifting. During the ensuing period there was a “waxing and waning” of symptoms in that the wrist would become irritated as she tried to resume her activities as a beautician. She was treated with medication and massage including injections in the area of the tendon and remained under Dr. Cary’s treatment for a significant length of time. It is plaintiff’s contention that the trial judge abused his discretion in failing to compensate her for a permanent disability of the wrist.
In his reasons for judgment the trial judge stated:
“As to the matter of the amount to be awarded to plaintiff for pain and suffering, the facts are that according to Dr. Cary there should not be any residual effects, and his treatment covered a period of from March 29, 1978, to September 12,1979. The court is of the opinion that an award for pain and suffering of $12,-000 would be adequate and not excessive.”
Dr. Cary testified as follows:
“... the only thing ... which could be called objective was the fact that she had some swelling over the tendon in the wrist on one occasion that went to the thumb in the distal wrist area. But the objective popping, the occasional swelling in the tendon and everything else was basically subjective with the patient complaining of waxing and waning of discomfort in the right wrist on her range of motion. Inactivity and repeat of the X-rays showed no internal change. She showed no evidence of atrophy of the forearm compared to the opposite side, indicating she continued to use the hand, not necessarily on the job routine but in a satisfactorily fashion during the day.”
Asked if she was left with some residual disability he stated that she still had complaints in her wrist and the popping on occasion. He further stated, “and yes, I would say she had a disability in her wrist.” Asked by the court as to the prognosis he replied:
“Your honor, I think the prognosis is good. I think that she may continue with a little snapping in the wrist or some minor structure in the wrist. But these things usually subside with time, with activities, with — over prolonged months or years.”
Question: “Shouldn’t it have subsided by now to permit her to go back to her work?” Answer: “Yes. I think so.”
As we review this testimony Dr. Cary was of the opinion that plaintiff still had the popping and discomfort of the wrist at the time of the trial in April, 1981, three years after the accident but felt that it would subside at some point in the future. Thus, the issue is whether the trial court’s award of $12,000 for such an injury constituted an abuse of discretion. We conclude that it was considering that this is a nag *711 ging injury which had persisted for over three years and may continue, as Dr. Cary put it, “over prolonged months or years.” Accordingly, we raise the award to $20,000 which is the lowest point reasonably within the discretion afforded the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The final issue is the trial court’s award of lost wages in the amount of $5500 with plaintiff and defendants both taking issue with the award.
Plaintiff testified that she was unable to perform all of the duties of a beautician from the time of the accident until the time of the trial and was required to reduce her work days from five days a week to only on Thursday, Friday and Saturday. This evidence was corroborated by a witness who came to work for her. She produced income tax returns for the years 1975 through 1979, which showed her average net profit for the years 1975 through 1977 to be $9814.05 in contrast with net earnings for 1978 in the amount of $933.00 and 1979 $2440.00. In his reasons for judgment the trial judge made the following observation:
“With regard to the matter of lost wages, the only evidence offered by plaintiff is tax returns which were filed on behalf of plaintiff and her husband, and while these show a decline in the income the court does not feel that the evidence preponderates in- favor of plaintiff’s claim that the loss was due entirely to her inability to use her wrist in performing the type of work which she had been doing. The court is of the opinion that an award of $5500.00 for lost wages would be adequate.”
In the light of Dr. Cary’s testimony, we cannot say that this finding is clearly wrong. He specifically noted that the lack of atrophy in the injured arm indicated that she continued to use her hand in a satisfactory fashion although not necessarily on the job routine. Noting that her discomfort waxed and waned he suggested that she work every other day which would permit the wrist to “settle down.” He was not emphatic with respect to her permanent disability and assigned no percentage of such.
In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971), the court held that where there is a legal right to recovery but damages could not be exactly estimated, the trial court has reasonable discretion to assess damages based on all the facts and circumstances of the case, and that this principle is applicable to the fact of loss of earnings. Thus, the question is whether the trial court abused its discretion in making this award. We conclude that he did not.
Accordingly, the judgment appealed from is affirmed but amended so that there is judgment in favor of plaintiff, Linda C. Hobbs, and against defendants, George Oliver, Jr. and State Farm Mutual Automobile Insurance Company, jointly and in solido in the sum of $25,500.00 with legal interest from date of judicial demand until paid and for all costs of these proceedings.
AMENDED AND AFFIRMED.
REDMANN, C.J., dissenting in part.