BARRY, Judge.
This suit is for damages allegedly due to defendant’s negligent workmanship in repairing a leaking tile roof. Plaintiffs were awarded $550 and defendant suspensively appeals.
While minor facts are in dispute the only material issue is whether plaintiffs proved by a preponderance that their damages resulted from defendant’s faulty work.
On April 23, 1981, defendant Charles Clotworthy Roofing Co., Inc. (Clotworthy) received a phone call from Mr. and Mrs. Keith requesting two estimates for residential roofing work: one for a patch up or repairs to the existing roof and another for complete re-roofing. On April 29, 1981 a written proposal for $275 was submitted and one month later, May 29, 1981, Mrs. Keith called Clotworthy and accepted the patch bid. After the work was completed the Keiths mailed a check for $275 dated June 11, 1981, to Clotworthy. Approximately ten days later during a rainstorm Mrs. Keith noticed water leaking onto the floor. Clotworthy contends (and plaintiffs dispute) attempts were made to patch the leaks. After the last repairs in August, 1981, no further complaints were conveyed to Clotworthy and the Keiths filed this suit one month later.
Appellant Clotworthy argues appellees failed to produce legally sufficient evidence to prove an essential element of their ease, i.e., the damages were caused by faulty workmanship. Clotworthy asserts leaks existed at the initial inspection of thé roof on April 29, 1981, as evidenced by the written contract and the testimony of the Keiths and their tenant, Ms. Beninate. Appellant claims the damages increased before any repairs because of the one month delay between the inspection and the acceptance of the bid. Appellant maintains Mr. Davis, appellees’ expert, did not testify that the damage was caused by faulty workmanship but merely gave an estimate for water damage. Appellant takes the position no direct evidence was adduced to prove causation and the circumstantial evidence was legally insufficient to exclude other reason *1214 able hypotheses with a fair amount of certainty. Maryland Casualty Co. v. Trahan, 384 So.2d 819 (La.App. 4th Cir.) writ denied 392 So.2d 689 (La.1980).
An alternative hypothesis advanced by Clotworthy is that the persistent leaks were due to the age of the roof (twenty-five or thirty years) which precluded correction without replacement of the entire roof. Appellant asserts two of its witnesses, Mr. Clotworthy and Joseph Campagne, the subcontractor who supervised the patch work, testified every effort was made to properly repair the leaks. However, the roof appeared beyond patching, but since appellees ordered the repairs and no further complaints were received after the August repair attempt, both witnesses believed the leaks had been corrected.
Appellees counter the testimony proves by a preponderance that while minor damage existed prior to the attempted repairs, severe damage did not surface until after appellant’s initial effort to repair. Appel-lees claim the damage increased because appellant continually failed to respond to their complaints. In response to appellant’s claim the roof was not repairable, appellees contend the roofer was derelict in failing to inform them such serious defects existed. Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268 (1967).
We recognize every contract for work or services carries the contractor’s implied obligation to perform in a good, workmanlike manner; in default, there is liability for damages resulting from non-compliance. Before the contractor can be held liable for breach of this implied obligation the plaintiff is required to prove the faulty workmanship caused the damage.. LSA-C.C. Arts. 1930, 2769, Goudeau v. Hill, 410 So.2d 338 (La.App. 4th Cir.1982). Plaintiff’s burden of proof in a civil case is by a preponderance of the evidence: all the evidence, direct and circumstantial, taken as a whole must show that the causation or fact sought to be proved is more probable than not. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971).
We are satisfied the leaks were not fixed by the first effort to repair. Mr. Clotwor-thy testified it was not unusual to miss leaks on the first try, but he emphasized repair crews were sent back each time (twice) the Keiths complained. Appellant’s subcontractor agreed there was no guarantee the leaks would stop, but he thought the previous crews had not removed enough roof area. Accordingly, he took up a larger area of tile (ten feet by ten feet) to be sure the leaks were corrected. He assumed, as did Clotworthy, that this last effort did the trick because no further complaints were made. He also testified it was his opinion a new roof was needed but he could not recall telling Clotworthy or the owners. There is no evidence that appellees were informed of this possibility, but appellant argues appel-lees’ request for an estimate to re-roof the house showed their knowledge of the deteriorated roof.
While the evidence suggests the roof was not repairable, this fact was not conclusively established. There is ample proof to support the lower court’s finding that a portion of the interior house damage was caused by appellant’s negligent repair work.
Plaintiffs’ tenant, Rhonda Beninate, testified she moved into the house October 1, 1980 and, since that time, the entire interior had been painted. She said there was no evidence of a leak until the spring of 1981, estimating on cross-examination that to be sometime in April. She distinctly stated that after Clotworthy came out to repair the roof the first time, the leaking got worse; more water was coming into the house, the paint and plaster began to peel and eventually the ceiling “bellied.” Appel-lees concurred that after the repairs were attempted, the leaking became progressively worse, damage increased and in mid-July the ceiling “bellied”, appearing it would soon collapse. Eventually, to prevent further damages, Mr. Keith placed buckets in the attic to catch the leaking water which were still there at the time of trial.
*1215 Charles Davis, plaintiffs’ expert, who estimated $2,344.70 to restore the interior, stated on cross-examination he could usually tell when water damage was present for a long time by the presence of mold, but no mold had formed.
While the proof is not as precise as we would like, the evidence clearly preponderates in plaintiffs’ favor. The Trial Judge awarded $550 of the $2,344.70 in damages estimated by plaintiffs’ expert and, based on the record, this amount is not an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
The judgment of the trial court is affirmed, appellant to pay appeal costs.
AFFIRMED.