I .PETERS, J.
Daphne McGinnis brought this action to recover damages she allegedly sustained when she ingested “worm-like” organisms in cabbage purchased at an Alexandria, Louisiana location of Piccadilly Cafeteria, Inc. (Piccadilly Cafeteria). A bench trial resulted in a judgment in favor of the plaintiff in the amount of $500.00. Ms. McGinnis has appealed, seeking an increase in the quantum award.
On September 11, 1996, Ms. McGinnis and a coworker, Matthew Murdock, ar *660 rived at one of the Alexandria, Louisiana locations of Piccadilly Cafeteria. Ms. McGinnis testified that as she went through the serving line, she selected chopped beef, mashed potatoes, and cabbage for her meal. Upon being seated in the dining area, she began to eat her meal. According to Ms. McGinnis, halfway through her meal, she noticed three “worm-like” organisms in the cabbage. Having already eaten some of the cabbage, she became nauseated and rushed to the bathroom, where she began vomiting.
Upon returning from the bathroom, Ms. McGinnis asked Mr. Murdock to call | ?for a representative of the cafeteria. Mr. Mur-dock, who had observed the worms when Ms. McGinnis pointed them out to him before she exited to the bathroom, got the attention of a Piccadilly employee who observed the worms and left to speak to the manager. Before the employee’s return, Ms. McGinnis again became nauseated, returned to the bathroom, and vomited again. The employee returned and offered to replace the food and stated that Ms. McGinnis and Mr. Murdock would not have to pay for the meals. Ms. McGinnis refused the offer to replace the cabbage and left the cafeteria.
Ms. McGinnis testified that on her return to work, she again became nauseated. While at work, she continued to feel nauseous and eventually left work early. She testified that her nausea continued throughout the evening and the following day. On the day after the incident, she sought medical attention at the Rapides Regional Medical Center Emergency Room (Rapides Regional), where her condition was diagnosed as acute gastroenteritis. On September 23, 1996, Ms. McGinnis was first seen by Dr. Gregory A. Brian, an Alexandria, Louisiana board certified family practitioner. Dr. Brian saw Ms. McGin-nis on two more occasions, with the last visit occurring on December 2, 1996. The doctor did not testify that he reached a diagnosis of Ms. McGinnis’ condition in the September 23 visit, but on October 11, 1996, he was of the opinion that she suffered from irritable bowel syndrome. This diagnosis remained the same on December 2.
After a bench trial, the trial court rendered judgment in Ms. McGinnis’ favor in the amount of $500.00 for “mental anguish and physical pain ... directly related to consumption of the meal.” However, the trial court rejected her claim for medical expenses and lost wages. In this appeal, Ms. McGinnis asserts that the trial court herred in not awarding recovery for the medical expenses she incurred at Rapides Regional and Dr. Brian’s office, in not awarding lost income sustained as a result of the accident, and in awarding inadequate general damages.

Medical Expenses

Ms. McGinnis introduced medical bills related to treatment she received at Rapides Regional and the office of Dr. Brian. Ms. McGinnis introduced an itemized statement from Rapides Regional, reflecting charges totaling $647.00, less an account adjustment of $129.40. The itemization of services begins with services rendered on September 30, 1996, and does not include any charges for the services rendered the day after the event. Rather, the September 30 entry corresponds to tests ordered by Dr. Brian when he first saw the plaintiff. Dr. Brian’s charges for his services totaled $198.28.
Dr. Brian testified that he first saw the plaintiff on September 23, 1996, or some twelve days after the incident at Piccadilly Cafeteria. She complained of stomach problems, including gas, nausea, and vomiting, but did not complain of abdominal pain. According to Dr. Brian, Ms. McGin-nis did not tell him of the cafeteria incident. The doctor testified that in his examination, he found no indication that Ms. McGinnis was under stress or that she was nervous or upset. He ordered an upper GI series and gallbladder sonogram, which were apparently performed at Rapides Regional on September 30. Both test results were normal. The following exchange *661 took place between counsel for the defendant and the doctor concerning the doctor’s opinion of causation as of the initial visit:
Q. Okay. In your opinion, if she had eaten a meal with some type of worms in it, would that have accounted for her problems on 9/23/96, if she consumed this meal on 9/11/96?
LA. Not that I could think of with that distant amount of time.
• The doctor saw the plaintiff again on October 11, 1996, and diagnosed her condition as irritable bowel syndrome. He explained that this was “a situation where the gastrointestinal tract is hypersensitive to ... either to stress or certain types of foods.” When further questioned about his feelings of causation at the time of the October 11 visit, the doctor testified as follows:
Q. Okay. Would you relate any of her complaints on 10/11/96, or your treatment to any alleged consumption of worms in a meal on 9/11/96?
A. Not that I can think of.
Q. Did she mention to you having eaten worms about a month earlier on the 10/11/96 visit?
A. I have no mentions of the ingestion of worms in my notes for either of those visits.
The plaintiff next saw the doctor on December 2, 1996. According to Dr. Brian, she told him that she “felt better.” The doctor’s diagnosis remained the same, irritable bowel syndrome. Dr. Brian testified that the plaintiff exhibited no signs of stress, anxiety, or nervousness on that date and that she did not mention the worm incident. When questioned concerning what he would expect from one ingesting worms, the following exchange took place:
Q. Doctor, if a person did consume a meal with worms in it, and assume they become upset and vomited — • how long would you expect that medical condition from the upset consuming the worm ... worms would generally last?
A. Well, when we’re, talking about worms, I need to know what we’re talking about. Are we talking about maggots? Are we talking about earthworms? Or....
Q. All I can tell you is — assume it’s worms that were in some cabbage allegedly at a restaurant. And the person gets upset, and throws up, has nausea.
LA. Was the ... was this cooked, or raw, or ... the only thing I could think of with regards to something like that would be if the food, itself, was spoiled. The most worms that I could think of themselves would not be toxic, in and of themselves. There are some parasites that one ... that humans can get, that are, quote, “worms.” But you normally don’t get them or you wouldn’t see them in a ... and it would be hard for them to get into a meal. You know? Usually, from human parasitic worms would be from fecal contamination, where you would have to get that directly from human feces one way or another.
Q. Most of the upset from a worm is just from the visible seeing it, then becoming upset, and throwing up?
A. That’s true. That could happen. You could ... you know ... a person could get emotionally distraught over seeing worms and vomit then. But that shouldn’t last more than the brief period it would take for the vomiting to occur, and getting away from the spoiled food or the worms in the food.
Q. And did she have any indication of food poisoning or parasitic worms of any kind?
A. Not that I know about.
Piccadilly Cafeteria introduced medical records from St. Frances Cabrini Hospital in Alexandria, Louisiana, which established that Ms. McGinnis had a previous history *662 of stomach difficulties not connected with any traumatic event. Considering this pri- or history and Dr. Brian’s unwillingness, to causally connect the cafeteria incident with his treatment of Ms. McGinnis, we cannot say that the trial court erred in concluding that the plaintiff was not entitled to recover for the medical expenses incurred. Such a finding is factual and subject to the manifest error standard of review. We find no manifest error present.

Lost Wages

Ms. McGinnis testified that she is a school teacher and that she missed two days of work as a result of the incident (Thursday and Friday after the incident on Wednesday). Thomas E. Roque, an assistant superintendent with the Rapides Parish IfiSchool Board, testified that the plaintiff missed the next Monday as well. Ms. McGinnis further testified that her daily wage rate was $178.00. Mr. Roque was not questioned concerning her rate of pay. Although corroborating evidence of her daily rate of pay was certainly available, no one questioned the $178.00-per-day amount. The supreme court has held in Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971), that the plaintiffs own reasonable testimony, if accepted as true, is sufficient to establish loss of income but that it is the better practice to introduce corroborating evidence. Given the nature of the event, its immediate effect on the plaintiff, and her need for medical attention the day after the event, we do find that the trial court erred in not awarding the lost income for her three days of recovery. Therefore, we find merit in this assignment of error and award the plaintiff the sum of $534.00 in lost wages.

General Damages

The trial court limited its award of general damages because it found there was “no proof ... that Mrs. McGinnis ingested any of the foreign matter or even had she done so, it could have caused a viral infection of acute gastroenteritis.” We do find evidence that Ms. McGinnis ingested some of the “worm-like” organisms. Concerning this event, the following exchange took place during Ms. McGinnis’ testimony:
Q. Okay. And what ... would you please tell the Court what happened while you were eating?
A. Well I was halfway through my meal and halfway through the cabbage when I noticed worms in my cabbage.
Q. What did they look like?
A. They looked like maggots, there were three of them.
|7Q. Okay. And do you believe ... do you have a belief as to whether you had ingested worms?
A. Yes, I ... I believe that I had eaten some because I had eaten half of the cabbage.
Ms. McGinnis further testified 'that she informed the personnel at the Rapides Regional Emergency Room the next day that she had ingested the worms and that her condition had persisted since the incident. We do conclude that the trial court erred in limiting the award of general damages to the day of the incident. After reviewing the particular injuries and their effects on this particular plaintiff, we conclude that the lowest reasonable general damage award that should have been entered was $3,000.00. See Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
DISPOSITION
For the foregoing reasons, we affirm that portion of the trial court’s judgment rejecting the plaintiffs claim for medical expenses. We reverse that portion denying lost wages and render judgment awarding the plaintiff $534.00 as lost wages. We further amend the general damage award by increasing it to $3,000.00. All costs of this appeal are taxed against Piccadilly Cafeteria, Inc.
*663 AFFIRMED IN PART; REVERSED IN PART AND RENDERED; AND AMENDED IN PART.
COOKS, J., CONCURS IN PART AND DISSENTS IN PART.